## The Town of Burlington vs. The Town of Calais.

That the confessions of the overseer of the poor and agent of a town, made while executing his agency, may be proved as evidence against such town.

That a year's residence under the settlement act of 1797 does not require that the pauper should be constantly with his family, provided their place of abode remains his domicil.

That *coming and residing within this state*, in the first section of said act, does not require a coming from another state, but a coming from any place to the town to be charged is sufficient.

THIS was an action of *Assumpsit*, brought to recover the expenditures of the plaintiffs in support of one *Salmon Davis*, under the eleventh section of the *settlement act*. Two questions were principally agitated on trial, 1st. Whether *Calais* was the place of *Davis'* last legal settlement? and 2dly. Whether proper testimony was adduced by the plaintiffs, to prove notice of their expenditures, before the commencement of the action. The plaintiffs contended that *Davis* was legally settled in *Calais* by his residence there while the statute of 1787 was in force : and if not then, that he gained such settlement after the statute of 1797 came into operation. There was a jury trial in the County Court and exceptions taken to the decisions made on said trial; upon which the cause was brought to the Supreme Court. With regard to what occurred during the statute of 1787, the whole was so left with the jury that no exception is now urged which applies solely to that part of the case. The exceptions allowed, so far as they present the questions urged before the Supreme Court, are as follows, to wit : " The plaintiffs adduced testimony tending to show that said *Davis* in September, 1796, removed with his family from *Calais* to *Waterbury*, in *Vermont*, and remained there until May, 1797, when he returned to *Calais*, and with the consent of his brother *Phineas Davis*, moved into the house he first built, left his family there, and immediately went off to the *Eastward*, for the purpose of looking up a place to settle—that he was absent about one year, and then returned to *Calais*, where his family resided, and remained at *Calais* a short time, and returned again to the *Eastward* ; that he was back and forth, and in the fall of 1799, he purchased mills in the province of *New Brunswick*, and

AAA

Chittenden, Jan. 1829.

*Burlington* vs. *Calais*.

in 1801 he again returned to *Calais* for his family—remained there a few days, and on some of the last days of September of that year, he removed from said *Calais* with his family to the province of *Maine*, and was absent until 1822, when he removed to *Essex*, in *Vermont*—that his longest absence from his family, while they were at *Calais*, was not a year. When he returned from *Waterbury* to *Calais*, he he did not hire a house for his family, but moved them into his old house as above stated, and said that when he went away to the *Eastward* he carried all his property with him—That he was never taxed, or paid any taxes, in *Calais* after he returned from *Waterbury*, nor before that time; except that he worked voluntarily upon the highways, there being no regular taxes until after the town was organized. The plaintiffs proved the amount of the expenditures, and that they wrote a letter to the defendants soon after the pauper was committed to prison in *Burlington*, informing them that they should call upon them for payment of the sum of money paid out for his support. *John C. Thompson Esq.* produced copies of the letter and offered himself as a witness to prove that *Shubael Wheeler*, as agent of the town of *Calais*, admitted at a justice court that the defendants had received the letter aforesaid. This testimony was objected to by the defendants and admitted by the court—And he testified to the acknowledgment of said *Wheeler* to the fact at, and after, the trial. Said *Davis* further testified, that when he went to the *Eastward* to find a place to settle in, he intended to continue at *Calais*, unless he found a place that suited him.

The defendants in support of the issue on their part introduced evidence tending to prove that said *Davis*, after he returned from said *Waterbury* to said *Calais*, owned no property, and that he did not return to *Calais* for the sake of making a residence there, but only left his family there until he could find a place of residence.

The counsel for the defendants requested the court to charge the jury—1. That the said *Davis* could not gain a settlement in said *Calais*, under the act of 3d of March 1797, by residing in said town one whole year without owning any property therein, or having rented and occupied a tenement of the yearly value of $20, or upwards, for the term of two years, and actually paid such

rent—or having executed some public of-
fice or charge in said town, during one
whole year, or having been charged with, and paid, his share of the public rates or taxes of said town for the space of two years —and that the last clause (except one) of the first section of the act of the 3d of March, 1797, applies only to such persons as come from abroad into this state, after the passage of said act, or after the time it went into operation, and should have resided one whole year thereafter in some town within this state. 2. That if the said *Davis* brought his family from *Waterbury* to *Calais*, not for the purpose of making *Calais* his place of residence, but only for the purpose of leaving them there until he could find a place of residence for himself and family, and did leave them there, and directly thereafter go without the state, in search of a place of residence, and continue absent (except one short visit to his family in 1798) until he found a place of residence, and returned for his family in September, 1801, and immediately thereafter removed them without the state, he could not gain a settlement in said *Calais*, nor his family gain one for him. 3. That the declarations and acts of the pauper, at the time of bringing his family from *Waterbury* to *Calais*, are to be considered as conclusive evidence of his intentions, whether to make a permanent residence there, or not—and that one year's residence, required by the act of 1797, should be an actual continued personal residence of the pauper for one whole year.

Whereupon said County Court refused to charge the jury as requested by the defendant's counsel, but charged them as follows, to wit,—"That in ascertaining the facts in controversy they must weigh the testimony of said *Davis*, in connection with all the impeaching and corroborating testimony; and if they should find that the pauper, when he moved his family from *Waterbury* to *Calais* in 1797, or 1798, and went to the *Eastward* to find a place to settle, as he terms it, intended they should reside at said *Calais* until he should find a place to remove them, and that his abscences from his family were to find a place to settle, as he testifies, and that his family actually resided in said *Calais* more than a year at one time, after the fall of the year 1798, and before their removal to the *Eastward* in 1801, *Davis* himself visi-

Chittenden, Jan. 1829.

*Burlington* vs. *Calais.*

ting them, as he has testified—that gained him a settlement in *Calais*, the same as it would have done had he been at *Calais* with his faming during the same year ; but that, if there was not such a full year's residence, as last described, he gained no settlement in *Calais*, after his return from *Waterbury* to *Calais*—That, if they found that the pauper had thus gained a settlement in *Calais*, they would return their verdict for the plaintiffs, otherwise for the defendants." To which decision and charge the defendants excepted, and filed these their exceptions, which were allowed; and the case ordered to the Supreme Court for a hearing on said exceptions, and the execution in the mean time was staid.

*Griswold, for the defendants.* The question arises whether the pauper has ever gained a legal settlement in *Calais*, or even in any town in this state. It is believed that it was not, and will not be, contended, from the whole evidence on the trial, that he gained a settlement in *Calais*, during his first residence there, under the provisions of the act of March 1787 ; although that question was by the judge left to the jury to decide. If, then, a settlement has been gained in *Calais*, it must have been under the act of the 3d of March, 1797. It is then insisted by the defendants—

1. That in order to gain a settlement under the last mentioned act, the residence must be a personal, continued residence of the pauper for one year ; the wife and family being incapable of gaining a residence for him—And that the mere leaving a wife and children in a town by a pauper, and immediately thereafter absenting himself with all his property, and with the express declaration that it was his intention to leave them there temporarily, and only until he could find a place to settle himself and family, cannot be considered such a residence as will acquire a legal settlement.

2. The requisites to be complied with under the act of 1797, in order to gain a settlement, contemplate, in all cases, an actual, personal and continued residence, except an occasional absence on business, and not a constant and continued absence, and occasional return for a few days in the course of three or four years. The person who owns a freehold estate or rents a tenement, must actually occupy and improve the same. The person who holds an

office must actually inhabit, and execute ⎧ Chittenden, Jan. 1829.
the office, in the town. The person who ⎨ Burlington vs. Calais,
gains a residence by payment of taxes in any town must necessarily be an inhabitant, and actually reside therein : and the indented apprentice must also serve out his time within the town :—and can it be supposed that the Legislature intended that less should be required, as to the actual residence of a mere sojourner, than of those who own and rent property, pay taxes, execute offices, &c. ?

3. When a settlement is gained by a residence under the *English Statutes*, it must be an actual residence on the tenement rented, or in the town or parish where it lies ; for a residence in one town or parish, and occupying a tenement in another, is not sufficient. So where settlements are acquired by a hiring in service for a year, the payment of public taxes, executing a public office, or being bound as an apprentice, are all predicated upon and require actual residence,—and the apprentice must inhabit in the town where his master resides. It ought to be here mentioned that the *English Statutes* exclude married persons from gaining a settlement by hiring and service for a year.

4. The last clause of the first section of the act of 1797 was intended by the legislature to apply solely to those who should thereafter come to, and settle and reside within, this state from abroad, with a view to encourage emigration, and to increase the population of the state. And the former requisites in the same section are to be considered as applicable as well to those who might thereafter come to reside from without the state, as to those already resident therein. This, then, being a proper, and sound construction of the act, the pauper did not come within any of its provisions, as he had, at the time of the passage of this act, lived in this state at least ten years.

5. This action is predicated upon the 11th section of the act of March, 1797 ; and in order to entitle the plaintiffs to a recovery, notice should have been given to the town of *Calais* of the amount of expenses incurred in his support, and a demand of payment made, before action brought. In this case the plaintiffs were admitted to prove the notice and demand, by showing the admission of the fact by the agent of the town at the justice court,

Chittenden, Jan. 1829. ⎱ and his acknowledgment of the same af-
Burlington vs. Calais. ⎰ terwards.   The acknowledgments, or ad-
missions of an agent or attorney, except for the time being, cannot
be legally admitted as testimony.   The agent in this case, as well
as every other inhabitant, were competent witnesses to prove this
or any other fact in the case.

6.  Although it does not  appear whether the jury considered
that the pauper gained a settlement under the act of 1787, or
1797—yet if the charge of the court was erroneous on either
point, or improper testimony was admitted, the verdict must be set
aside and a new trial granted.   *Authorities cited.—Stat. of
March* 1787.—*Id.* 1797.—*Rev. L.* 369.—*Stat. of Nov.* 1801.
*Ed. of* 1808, 400.—*Jacob's Law Dictionary, title Poor,* 218 *to*
233.—10 *Mass.* 394, *Billerica* vs. *Chemlsford.*—13 *Id.* 501,
*Cambridge* vs. *Charlestown.*—14 *Id.* 384, *Boston* vs. *Wells.*—6
*Id.* 501, *Dalton* vs. *Hinsdale.*

*J. C. Thompson, for the plaintiffs.*   The defendants con-
tended, that the pauper could not obtain a settlement under the
act of 1797, by  a year's residence merely, and the  court refus-
ed so to charge.   Upon this point the plaintiffs contend,  1. That
the means of acquiring a settlement, enumerated in the first part of
the 1st section of the act of 1797, are  applicable  to all persons
without reference to *behaviour* or *health,* and that the subsequent
clause relates only to persons *healthy, able bodied and peaceable,*
and that the Legislature intended that the latter, the last description
of persons only, should gain a settlement by mere residence.

2.  The expression "coming and residing within this state," &c.
and "in the town or place in which he or she shall have first resid-
ed," include all  such persons  (with the above qualification) as
should come from *any* place whatever  into any  town, and there
reside one year, under that act; and that such persons gain a settle-
ment wherever they first reside one full  year.   The expression
" coming and residing within this state," can no more be confin-
ed to persons coming from *other states* after the passing of the act,
than the expression "shall come and reside in any town in this
state," in the act of 1801, *Old Stat* 1 *vol.* 400. The words "with-
in this state" are mere surplussage—they are in almost every sec-
tion of the numerous acts on this subject. The words " who shall

"have come to reside in such town or *Chittenden, Jan. 1829.* place," in the 3d section, and the words, *Burlington vs. Calais.* "town or place in this state," in the 2d section of the act of 1797, taken in their necessary connexion, amount to the same as the above expression in the 1st section. Do the words " shall bring into any town or place in this state," in the 11th section, include those only who shall bring persons from another state?—1 *vol.* 388.—*New Stat.* 382, *sec.* 2. Expressions, similar to those in the first section of the act of 1797, are to be found in 1st, 2d,3d & 4th sections of the act of 1801.The 1st section of the act of 1797, includes those who came *before*, as well as those who came *after*, the passage of the act to reside in any town.

3. The charge of the Judge,relative to the character of the residence, was correct. Every man's residence is where his family reside, until he entirely abandons. A temporary absence, while he intends to return, will have no effect.

4. Sufficient notice of the claim was shown by proof of the acknowledgement of the agent while executing his agency.

HUTCHINSON, J. delivered the opinion of the Court, first concisely stating the case.

The points now in dispute are reduced to a narrow compass. Supposing the plaintiffs to have a just claim upon the defendants for the support of *Davis*, the pauper, while confined in the common jail, in *Burlington*, have they shown a proper notice of their claim before the commencement of this action ? About this there is no dispute, if the testimony offered by the plaintiffs to that point was legally admissible. It seems that a letter was sent by the mail to the overseers of the poor of *Calais*, containing the proper notice of the expenditures, and requesting payment. And, to prove that this letter was received, the plaintiffs offered, and the Court admitted, proof, that, at the trial of this cause before the magistrate,a *Mr. Wheeler*, one of the overseers of the poor of said *Calais*, and the acting agent to defend this suit, acknowledged that he had duly received the letter ; that he fully acknowledged this, while attending the Justice Court, during and immediately after the hearing of the cause.

It is objected that this testimony was not admissible. The doctrine is well settled, that the sayings of an agent while execu-

Chittenden, Jan. 1829.
Burlington vs. Calais.

ting his agency, form a part of the *res gesta*, and may be proved against his principal: but the after confessions of such agent, about the facts of the case, may not be thus proved ; but the party wanting the proof must call the agent himself, or other witnesses to what actually transpired at the time. In 1*st of Camp. R.* 140, *Young et al.* vs. *Wright,* cited in *Peake,* 36, it is said what an attorney admits on the record, to obviate the necessity of proving it, binds his client ; for he will be presumed authorized. The acknowledgment in the present case, though not made of record, was made to obviate the necessity of proof, and that at the time and place of trial, and while *Wheeler* was executing his agency as overseer of the poor in defending the same suit, preparatory to which the letter was sent. It is urged, however, that *Wheeler* might have been called as a witness by the plaintiffs. So may any one, who acts merely as agent, be called at any time to prove what transpired connected with his agency. *Wheeler,* though an inhabitant of *Calais,* is made a competent witness by statute, and could not refuse to testify if called by the plaintiffs ; yet it would be going too far, to compel the plaintiffs to bring him to court, and use him as a witness, when he, in the execution of his agency, has furnished such testimony as that adduced in the present case. This exception is overruled.

We proceed to enquire whether the charge of the court was correct with regard to the residence of said *Davis,* and his gaining a settlement after the statute of 1797 came in force? The testimony was, that he left his family in the log-house in *Calais,* where he had formerly lived, before he moved to *Waterbury,* and went to the eastward with a view of finding a place to which he would remove his family ; that he visited his family several times ; was not from them a full year at any one time ; that he found no place to which he concluded to move his family till the year 1801 ; that during all that time, he intended living in *Calais,* unless he found a place that suited him somewhere else. In all this, there is no making of any rest at any one place without a view of settling there. Where his family was, must have been his domicil, or he had none. This is not like the case of *Raymond,* cited from *Mass. Reports.* He left his family in *Vermont,* and took up his residence

in *Massachusetts*, with a view to move { Chittenden, Jan. 1829.
his family there as soon as convenient.— } Burlington vs. Calais.
Nor is it like the case of *Bilerica* and *Chelmsford*, where the
pauper actually moved his family with a view to settle and
never return, but moved back after three months.    *Davis'*
domicil being in *Calais*, from the time the statute of 1797 came
into operation, until the latter part of September, 1801, when he
moved with his family to the then *Province of Maine*,   we think
this such a residence as would gain a legal settlement in *Calais*.

But the defendants insist that, as *Davis*, when he last moved to
*Calais*, had not newly come into the state, but moved from *Waterbury*, another town within the state, a year's residence would
not gain him a settlement.    The first section of this statute, (*see
page* 369,) describes the various ways, in which a person may
gain a settlement in any town.      1. The purchasing, paying for,
and occupying for a full year, a freehold estate of the value of $100.
2. Renting a tenement, and occupying two years, and paying a
rent of $20, or upwards.     3. Living in town, and executing a
public office one whole year.    4. Having paid his share of the
public rates or taxes, for the space of two years.    5. Having been
bound, and served as an apprentice not less than three years before
coming of age.    It then adds, 6thly. "And every other healthy,
able bodied person, coming and residing within this state, and being of peaceable behaviour, shall be deemed and adjudged to be
legally settled in the town or place in which he or she shall have
first resided for the space of one whole year."    It is contended
that this last provision extends only to persons newly coming into
the state.    And this idea is enforced by the argument, that, upon
any other construction, it would render some of the former provisions useless.    This argument is not without weight ; yet we
are unwilling to believe the legislature, at so late a period as the
year 1797, would designedly make such a provision for the mere
purpose of encouraging emigration ; especially when it could
have no such effect whatever.    Every person moving from without the state into any town within the state, has a legal settlement
in such town forthwith, so far as relates to the liability of such
town to furnish their support : that is, if they are in want, the
town must maintain them, and cannot remove them to the place

BBB

Chittenden, Jan. 1829.  whence they came, it being out of the
*Burlington* vs. *Calais.*  state; nor to any other town in the state, because they have no residence there. We cannot, therefore, presume that the legislature would make such a provision for an object that would not be effected by it. This last provision might have been introduced as an amendment to the former parts of the section, without a full consideration, how far it might absorb the former provisions. Yet even this may not be so; for the former provisions have no regard to the question of good or ill health, nor to the question, whether a person should be able bodied when coming into any town to reside. Hence the legislature may have intended to make health and strength of body as good a qualification for a settlement, as a certain amount of property, used in a prescribed manner. Furthermore, the provisions about towns, in that statute, all relate to towns within this state; towns over which the laws might have effect, and between the rights of which, courts might adjudicate and give effect to their decisions.

That statute looks forward exclusively. It makes provision for the future gaining of a settlement. The expression "coming and residing in the state," is indefinite and must be inoperative, till we pass on to the expression of the place within the state: that is, the town in which there is first a residing a full year. That may alike mean, the first, after the act comes in force, or first of their residing in any town. This, probably, ought to be construed, according to its spirit and meaning. As applied to those who should afterwards change their residence, it means the town into which they remove. As applied to the inhabitants that were stationed when the act passed, their remaining where they were, and being healthy and able bodied, brings them within the act. It is not to be presumed that the legislature intended to repeal all former modes of gaining a settlement, and not make provision for those inhabitants, that had not yet gained a legal settlement; though they had become stationed for life. Nearly the same expression is used in the warning-out statute; and by one mode of construing, that might only refer to such as should, after the passing of the act, change their residence. But the Supreme Court have put a construction upon that statute. They have decided that persons residing in any town when the act passed, and who continued to reside there a full year, without being warned out, gained a set-

tlement. Their being and residing is tanta- ⎰ Chittenden, Jan. 1829.
mount to their coming and residing. That ⎱ *Burlington* vs. *Calais.*
extends the provisions of the statute to all who had not gain-
ed, a settlement before the act passed. A settlement would be pre
vented by a warning; and would be gained, if the warning was
neglected.    That decision fully supports the construction we have
now given to the statute of 1797.

Upon the whole view of the case, we approve the instructions
given to the jury on the trial, and the judgment of the County
Court is affirmed.

*Thompson,* for plaintiffs.
*Griswold,* for defendants.