*ADDISON,*
*January.*
1830.

Parsons
*vs*
Young.

</div>

### Town of Middletown *vs*. Town of Poultney.

<div style="margin-right:0">

RUTLAND,
*February,*
1830.

</div>

Under the statute of 1801, by which a settlement was acquired by a year's residence in any town without being warned to depart, the residence of a man could not be continued by his wife and family in his absence from the state, so as to confer on him a legal settlement, unless they continued together keeping house as a family.

This was an appeal from the order of two justices, removing *Abel Hubbard*, jr. a pauper, from Middletown to Poultney, and was brought here upon exceptions taken by the plaintiffs to the decision of the county court upon the jury trial. The exceptions showed that the following facts, in substance, appeared in evidence on trial:—That in the early part of May, 1816, the pauper removed with his family and effects, from *Danby*, in said county of *Rutland*, to the town of *Poultney*, where he occupied a house belonging to one *Stevens*, near the dwelling house of *Cyrus Beardsley*, in *Poultney*, aforesaid, who was the father of the pauper's wife; the pauper bringing with him from *Danby* a horse and cow, which he hired pastured, and, which were afterwards disposed of in payment of his debts.—That no fixed time was agreed on between him and *Stevens* for the occupation of the house, but it was taken as a temporary residence, until he could

RUTLAND,
*February*,
1830.

Middletown
*vs.*
Poultney.

find a place to remové to. With the house he occupied a small garden, and planted some corn in the neighborhood. On the 3d day of Nov. 1816, he went away, leaving his family, consisting of a wife and two small children, in the house aforesaid, with a small stock of provisions not sufficient to last them through the winter. His object in going away was to find a place in the western country, to which he might remove his family. After traveling about a month, he reached the town of *Le Roy* in New-York, at which place he spent the winter, chopping cord-wood and doing other common labour. In the spring he took land to plant and sow on shares ; and continued there, hiring his board and working out by days-works, until the 1st of November, 1817, when he procured his family and effects to be removed from *Poultney* to *Le Roy* aforesaid. Neither the pauper nor any of his family were ever warned to depart from Poultney. It further appeared, that shortly after the pauper left his family as aforesaid, his wife and children, by order of her father, were taken to the house of the latter, and there remained until conveyed to *Le Roy* as aforesaid. Part of this time she laboured for her father, and in a few instances she laboured at other places for short periods of time.

The court instructed the jury, that upon these facts, if found, the pauper did not acquire a legal settlement in Poultney. And they having accordingly returned a verdict that the pauper was unduly removed, and judgement being rendered thereon, the plaintiffs filed exceptions, which were passed to this court according to the statute.

After argument by *Clark* for the plaintiffs, and by *Harris* for the defendants, the opinion of the Court was delivered to the following effect by

ROYCE, J.—By the statute which was in force till the autumn of 1817, a residence in any town for one year, without being warned to depart, confered a legal settlement in such town. The pauper was never warned to depart from the town of *Poultney*. Therefore, the only question is, whether he resided there for the space of one year, within the meaning of that statute. In all questions relating to the settlement of paupers, the court has pursued a rigid construction of the law, as between contending towns ; viewing the rights acquired by one, and the obligations imposed upon another, as the result of positive enactment, and not to be affected by the seeming equity or hardship of particular cases. Hence it was necessary that a residence, for the purpose of gaining a settlement, should be of a character and description fairly answering the intent of the legislature. While the pauper remained at *Poult-*

RUTLAND,
February,
1830.

Middletown.
vs.
Poultney

*ney* in person, his residence was doubtless of that character, for his domicil and family were established there, without any fixed or certain arrangements for a further removal.    But at the end of the first six months he left his family and went out of the state, and soon afterwards his wife and children abandoned the house in which he placed them, and went to live in the family of her father. The case does not show that after this the family establishment was preserved, but affords a strong implication that it was discontinued and broken up ;  for she who must have governed and conducted it was in the service of others, and occasionally in different places and families.    Under such circumstances it cannot be properly said that the husband continued to reside in *Poultney*. The constituent parts or members of his family were indeed there, but not in that ostensible combination, as a family, which was necessary to represent him in his absence.    It is perhaps material also to notice, that the wife and children did not leave the house and go to live in the family of her father, in consequence of any any arrangement to that effect previously made by the husband ; but his control over, and provision for, them seems to have wholly ceased upon that event.    Had they been taken in the same manner to the house of some friend in another town, it would scarcely be pretended that the residence of the husband followed them ;  and yet the question in such a case would rest on the same principle as in the present.

Under the English statute of *13th* and *14th Ch.* II, by which a settlement is acquired by a residence of 40 days upon a tenement of £10, annual value, the construction has been so strict as to require the personal residence of the party for that time, without attributing any importance to the fact that his wife and family may have resided upon the tenement, during his occasional or necessary absence.    This doctrine was strongly illustrated by *The King* vs. *Inhab. of St. George*, &c., (7 *T. R.* 466,) and *The King* vs. *Inhabitants of St. Mary Lambeth*, (8 *T. R.*, 240.)    But admitting that, in reference to the more protracted terms of residence required in this country to confer a settlement, this extreme strictness ought to be relaxed, (4 *Mass.* 312 —7 *Id.*, 363,) and that the case of *Burlington* vs. *Calais*, (1 *Vt. Rep.*, 385,) was correctly decided ;  yet between the last case mentioned and the present, there are distinctions, as obvious at least, as many others, upon which decisions in this branch of the law have frequently turned.    It is there stated among other grounds of the judgement rendered, that the pauper several times visited his family at *Calais*, that he intended living there unless he found a place that suited him elsewhere, that he found no such place

RUTLAND,
February,
1830.

Middletown
vs.
Poultney.

till 1801, and that during the whole time of his absence he made no rest at any place with a view of settling there ; by which last fact, the case was distinguished from that of *Cambridge* vs. *Charleston*, 13 *Mass.*, 501.   The present case is evidently different in most or all of these particulars.   And a distinction of more decisive importance arises from the fact already mentioned, that in this case the family establishment of the pauper was broken up, so that his domicil in *Poultney* was no longer to be seen.   On the whole, we are satisfied that the judgement of the county court must be affirmed.

<div align="right">Judgement affirmed,</div>