HEMAN LOWRY v. ELNATHAN KEYES.

The statute of 1832, in regard to the limitation of actions, providing that
"if any person shall go from this state before the cause of action shall
be barred," the time of such absence shall not be reckoned in determin-
ing the time within which such cause of action shall be barred, was not
intended to operate upon causes of action, which were then clearly
barred by the operation of the previous statutes of limitation.

THIS was an action of book account, brought to recover for the following items of charge, viz:

| | | |
|---|---|---|
| 1814, February, Serving writ, Farral v. Young, | $0 | 29 |
| 1817, July, do. do. Self v. Page, | | 83 |
| " November, To cash, | | 10,00 |
| 1818, March 27, Serving 8 warrants, | | 8,00 |
| " " 29, Serving 7 warrants, | | 7,00 |
| Fees on execution, | | 48 |
| " " | | 77 |
| " August 26, Serving writ, Self v. Holgate, | | 95 |
| | | 28,32 |
| Interest 22 years, | | 37,38 |
| | | $65,70 |
| 1823, To cash paid, | | 28,06 |

Judgment to account was rendered by the county court and the case referred to an auditor, who reported that he found the first eight items of the plaintiff's account truly charged and justly due and he allowed the same with inter-est, subject to the opinion of the court on the facts hereafter stated.

With respect to the ninth item, the auditor found that

about the year 1819, the plaintiff, as sheriff, served a writ on the defendant in favor of one Clough;—that the defendant, being desired to procure bail, replied that he would take care of the suit and that the plaintiff should not suffer, and that the plaintiff returned the writ without bail ; that Clough afterwards recovered a judgment against the defendant, who had in the mean time left the state, and the defendant not being found on the execution, Clough sued plaintiff, as sheriff, for the escape of defendant and recovered the amount charged, which plaintiff paid in 1823. This was all the evidence on this point, and the auditor, considering it insufficient, disallowed the charge.

The defendant insisted on the statute of limitations as to the whole account, but as it appeared that the defendant left the state in the year 1819, before any part of the amount was barred by the statute, and had ever after remained absent up to the time of the service of the writ, having no known property within the state, subject to legal process, the auditor held the defence to be insufficient, and allowed the first eight items as above stated, amounting to the above sum of $65,70, which he reported as the true balance due to the plaintiff.

The acceptance of the auditor's report was objected to by both parties, but it was accepted by the county court and judgment rendered thereon for the plaintiff. To which judgment both plaintiff and defendant excepted.

*C. Adams,* for defendant.

By the act of 1797, plaintiff's claim was barred. It appears by the report, that the cause of action accrued long before the defendant left the state, and it is well settled that when once the statute begins to run it continues to run notwithstanding the subsequent absence. *Peck* v. *Randall*, 1 Johns. 176. *Beckford* v. *Wade*, 17 Vesey, 93. *Smith* v. *Clark*, 1 Wilson, 134. 4 Bac. Ab. 480. Angell on Lim. 146, 7, 8, 9.

By a fair construction of the act of 1832, it applies only to causes of action accruing thereafter. The language of the act is plain and obviously looks to the future. "If any person *shall go* from this state before the cause of action *shall be barred.*" *Shall go* and *shall hereafter* go, are of the same import. It is more explicit than the act in the state of

*Margin:* CHITTENDEN, *January,* 1842.

Lowry *v.* Keyes.

CHITTENDEN, New York, which was adjudged·to the prospective.  *Dash*
January,   v. *Van Kleek,* 7 Johns. 477.
  1842.
          It is a first principle that all laws act prospectively.  1 Bl.
  Lowry   Com. 46.    6 Bac. Ab. 370.
   v.
  Keyes.       Even when words apparently bear upon previous contracts,
          courts will not put such a construction upon them, but will
          confine their effect to subsequent causes.    This was the case
          in the above suit of *Dash* v. *Van Kleek.*    The construction
          put upon the statute of frauds is in point.    That act declares
          that no action *shall be brought,* whereby to charge &c., un-
          less the agreement be in writing, and the English courts have
          decided that it should not extend to promises made before
          the statute.    *Helmore* v. *Shuter,* 2 Show. 17.    *Gillmore* v.
          *Shooter,* 2 Mod. 310.  *Couch* v. *Jeffries,* 4 Burr. 2460.  *Call*
          v. *Hagger,* 8 Mass. 423.

          Retrospective laws are not to be favored by the court.
          They are neither consistent with sound policy, safe for the
          people, nor just in themselves.  *Dash* v. *Van Kleek,* 7 Johns.
          477.  *Calder* v. *Bull,* 1 U. S. Cond. 176, 181.  *Ward* v. *Bar-*
          *nard,* 1 Aikens, 121.    1 Kent's Com. 455.  Angell on Lim.
          30, 31, 32.

          There are but three modes in which the repeal of the act of
          1832 can be made to operate ; 1st, as a repeal, *pro tanto,* of
          the act of 1797 ; 2d, as a legislative construction of that act,
          or, 3d. as the introduction of a new rule.

          It is not a repeal of the act of 1797, nor of any part of it.
          That act is left in full force and operates as it did before up-
          on every subject of it.

          It is not a legislative construction of that act.    The lan-
          guage of the act of '97 is clear and explicit, and no doubt can
          be entertained of its construction.

          But a construction of laws is a judicial act for the exercise
          of which the legislature is, by the constitution, incompetent.
          So long, then, as the act of 1797 remains in force, the proper
          construction of it rests wholly with this court.  *Dash* v. *Van*
          *Kleek,* 7 Johns. 477.  *Ogden* v. *Blackledge,* 2 Cranch, 272.

          The act of 1832 enacts a new law, introduces a new rule.
          It provides that absence from the state shall not be counted
          as part of the six years.    It does not, in terms, nor by its ef-
          fect, repeal the old act, nor attempt to put a construction up-

on it, but simply declares a new mode of computing the <span style="float:right">CHITTENDEN,<br>*January,*<br>1842.</span>
six years.

If we are correct in considering the act of 1832 as the introduction of a new rule, it is immaterial whether it acts mainly on the remedy, or affects the contract, for in either case it cannot affects rights acquired before.

<span style="float:right">Lowry<br>*v.*<br>Keyes.</span>

It is not necessary to moot the point, whether the repeal of the act of '97 can affect the rights of parties perfected before the repeal, for the simple reason that the statute is not repealed.   But we contend the repeal of a statute can never destroy rights already perfected.   A repeal may affect accruing rights, but rights acquired under existing laws cannot be destroyed even by the omnipotence of a legislature.

The question then is whether any rights can be gained under a statute of limitations.   An act changing the time of limitation from six years to four would not bar claims upon contracts of more than four years standing.   The creditor would be protected on the ground that, at the time of the repeal, he had a legal right to his debt, and no legislature can, by law, take away a debt from one and give it to another. So, on the same principle, the debtor has a right to his defence and the legislature cannot, by taking away his defence, create a debt against him and compel him to pay to another that which by existing laws he does not owe. Angell on Lim. 31.

Prescription is an evidence of title, and it matters not whether it be a title to a claim, or a title to a defence.   Angell on Lim. 67, 8, 9.   17 Ves. 88.

That a title is acquired to land by possession is the doctrine of every day.   The same principle extends to all personal property and indeed to every thing which may be possessed.   Six years possession of a horse would be plenary evidence of a right in the possessor, and this right must be the same whether made by the plaintiffs to maintain his suit for the horse, or by the defendant in his defence against such claim.

It must be so unless there be a distinction between a right to a thing and a right to a defence against a claim made for the thing, but the distinction is wholly imaginary. It is a distinction without a difference.   In trover or assumpsit for a horse, the defence of the statute is on the ground that the defendant, by his possession, has acquired the evidence of a

<div style="margin-left:auto">

CHITTENDEN,
January,
1842.

Lowry
v.
Keyes.

</div>

right to the horse, or, which is the same thing, a right to that particular defence, and hence it is necessary to plead it.

If the repeal of the statute could take away a defence which had become perfected by law, it would affect suits pending at the time of the repeal equally with suits commenced after, but in the suit of *Woart* v. *Winnick*, 3 N. H. 473, it was adjudged that the repeal could not affect suits then pending, and the cases of *Dash* v. *Van Kleek*, *Ogden* v. *Blackledge*, and *Call* v. *Hagger*, are to the same point.

The statute of limitations should be construed favorably for the defendant.

It has been appropriately termed a statute of repose. Angell on Lim. 26, 234, 248, 249. *A' Court* v. *Cross*, 3 Bing. 329. *Bell* v. *Morrison*, 1 Peters, 351.

*Hyde & Peck*, for plaintiff.

Statutes of limitation relate to the remedy and not to the right. They bar the remedy but do not extinguish the right. Story's Confl. of Laws, 481,490. *Williams* v. *Jones*, 13 East, 439.

A debt may be barred by the statute of limitations of the place where the debt was contracted and where the parties resided the full period of limitation, and yet may be enforced in another jurisdiction. This shows that the statute does not extinguish the right, for whatever is a discharge of the debt, by the law of the domicil of the parties, is a discharge everywhere. Limitation of actions is governed solely by the *lex fori*, and hence it affects only the remedy. The same principle applies to the several states of the union. *Decouche* v. *Savatier*, 3 Johns. C. R. 190 ; 6 Wend. R. 475 ; *Dunning* v. *Chamberlin*, 6 Vt. R. 127 ; *Ruggles* v. *Keeler*, 3 Johns. R. 263 ; *Pearsall* v. *Dwight*, 2 Mass. 84 ; *Dupleix* v. *De Roven*, 2 Vern. 540 ; *Williams* v. *Jones*, 13 East. 439 ; *Nash* v. *Tupper*, 1 Caine's R. 102 ; *Ryan* v. *Crowningshield*, 17 Mass. 55 ; *Medbury* v. *Hopkins*, 3 Conn. R. 472 ; *Andrews* v. *Herriot*, 4 Cowen's R. 508, 530, 538, n. 10.

*Hunt* v. *Fay*, 7 Vt. R. 170, turned on the distinction between a law of *discharge* and a law of *limitation*.

One remedy may be barred by the statute of limitations and yet another remedy may be had for the same right. *Lamb* v. *Clarke*, 5 Pick. 193. A debt may be barred and

yet a pledge given to secure it is not thereby discharged. The law of limitation being no part of the contract, but relating solely to the remedy, and as the *lex fori* governs, it follows that the decision must be according to the law existing at the time the remedy is enforced, and not according to the law at the time of making the contract. A law existing at the making of the contract, when repealed, can no more be pleaded than a foreign law of limitation. The law existing at the *place* and at the *time* of trial must govern the decision.

The manifest intention of the legislature in passing the act of 1832 (Comp. stat. of 1834, p. 57) was to substitute the provisions of this statute in place of the provision in the statute of 1797, (Comp. stat. of 1824, p. 291, s. 10,) not only as to debts contracted thereafter but as to debts then existing. The statute of 1797 contained an exception of defendants residing out of the state at the time the cause of action accrued. By the construction given to the statute of 1797, a debtor might abscond from the state the next day after the cause of action accrued, and, by remaining absent the period of the statute of limitation, bar the creditor of his remedy without any fault or negligence of the creditor or opportunity to collect his debt. This was unjust and unreasonable. The statute of 1832 was intended to cure this mischief and puts the subject on rational ground, giving to all creditors an opportunity for the period of limitation to collect their debts, and taking from the debtor the power of defeating this right. This statute is remedial and ought to be liberally expounded so as to be coextensive with the mischief. To be so it must embrace all debts. The words " shall go from this state" are equivalent to " shall be out of the state," otherwise the statute would not embrace persons who were never in the state, as such persons could not be said " *to go from this state.*"

The word "*return,*" in the statute 4 Ann. C. 16. s. 19, is construed *to come into* and applies to one who was never before in the state.

These words express the future not in reference to the passing of the act, but in reference to the contracting of the debt. The statute must either embrace all debts where the debtor left the state before the action was barred, or it must

*CHITTENDEN,*
*January,*
*1842.*

Lowry
*v.*
Keyes

be confined to cases where not only the debt was contracted but where the debtor left the state after the passage of the act. The latter construction leads to an absurdity, as it not only leaves all cases unprovided for where the debtor had left the state before the act was passed, although the debt was not barred, but by the repeal of the exception in the old statute it would bar *instanter* debts where the debtor left the state before the cause of action accrued (such as the last item in the plaintiff's account,) and which were saved by the exception in the old statute. Treating the statute of 1832 as a substitute for the exception in the act of 1797 or as a rule of construction obviates this difficulty.

The phrase " against whom there is or may be any cause of action" shows that the statute embraces existing debts. The term " cause of action" is synonymous with *debt* or *right* without reference to the remedy ; otherwise the words " before such cause of action shall be barred" would be surplusage and nonsensical. The statute then is in terms retrospective.

The unconditional repeal, in the second section of the act of 1832, of the exception in the act of 1797, is indubitable evidence of the intention of the legislature that the act of 1832 should operate retrospectively. But, without any evidence of such intent, the general rule is that whenever a statute of limitation is passed or altered, it operates both upon antecedent and subsequent causes of action, unless in terms limited to the latter, and the time is computed from the accruing of the action and not from the passing of the act. The legislature must be taken to have intended the legal consequence of their act. *Ross* v. *Duvall,* 13 Pet. R. 64.

As the defendant left the state before the debt was barred this case comes within the letter and spirit of the act.

But it is insisted that, as by the construction given to the old act, the debt was barred before the act of 1832 was passed, the law is unconstitutional. The answer is, that as statutes of limitation form no part of the contract, and as the *lex fori* governs the remedy, the legislature may repeal or amend them at pleasure. *Ex post facto* laws, within the meaning of the constitution, extend only to penal statutes Calder et ux. v. Bull et. ux., 1 Pet. Cond. R. 172. The act does not impair the obligation of the contract, *first,* because

a law of limitation is no part of the contract. *Secondly*, it does not impair the contract nor abridge the remedy, but only goes to confirm an existing right and in furtherance of the remedy, by curing a defect and adding to the means of enforcing an existing obligation. Such statutes, although retrospective, have uniformly been held valid both in England and in this country. 1 Kent's Com. 455. *Loche* v. *Dane*, 9 Mass. 360. *Haden* v. *Janes*, 11 Mass. 396. *Foster* v. *Essex Bank*, 16 Mass. 245, 255, 257, 261, 272, 273. *Maidstone* v. *Stevens*, 7 Vt. R. 487.

<div align="right">CHITTENDEN,<br>January,<br>1842.<br><br>Lowry<br>v.<br>Keyes.</div>

It is said by the court in *Calden* v. *Bull*, 1 Peter's Cond. R. 176, that "every law, that is to have an operation before ' the making thereof, as to commence at an antecedent time, ' *or to save time from the statute of limitations*, or to ex- ' cuse acts which were unlawful and before committed, and ' the like, is retrospective ; *but such laws may be proper* ' *or necessary.*" In *Sturgis* v. *Crowningsheld*, 4 Peter's Cond. R. 421, a distinction is taken between laws, which impair the obligation of contracts, and statutes of limitation, because " *statutes of limitation relate to the remedies which are furnished by the courts.*" The same distinction is recognized in *Foster* v. *Essex Bank*, 16 Mass. 245, where the court say, " there is no such thing as a vested right to do wrong."

The last item in the plaintiff's account ought to be allowed. The facts reported amount to a contract of promise on the part of defendant to pay whatever plaintiff might pay for him, and removes the objection to a recovery on book. This being an arrest on *mesne process* such contract is valid. *Planck* v. *Anderson*, 5 T. R. 37.

The opinion of the court was delivered by

REDFIELD, J.—We do not perceive any sufficient reason to doubt the correctness of the decision of the county court in relation to the charge for money paid. For whether the auditor disallowed it, on the ground that the evidence was " insufficient," in that it did not gain credit with him, or that it did not show such a payment of money as could be properly charged on book, it involving a question of special indemnity and consequential damage, the decision of the auditor would, in the first case, be final and not subject to

CHITTENDEN, January, 1842.

Lowry v. Keyes.

revision by the court; and, in the latter, it would be founded on such obvious principles of sound law, as could leave no ground of doubt of its correctness.

We think the decision of the county court, (and of the auditor,) in allowing the remainder of the account, is erroneous. That account, it is conceded, had long been barred by the statute of limitation, previous to the passing of the act of 1832. It is contended, that that act had such a retrospective operation as to remove the bar. Now conceding, for the argument's sake, (and we are not prepared to do it upon any other ground at present,) that the legislature may lawfully repeal a statute of limitations, so as to revive *extinct causes of action,* it is obvious, that, upon principles of expendiency merely, this would be one of the very last limits of power, to which they would resort. It is, therefore, not one which is to be inferred from any dubious construction. Such an intention should be unequivocally expressed, before courts would feel called upon to inquire into its propriety and validity. It appears obvious to this court, from the terms made use of in the act of 1832, that it was never intended to have any retrospective operation—at most, not to the extent now claimed. The most that could be contended for is, that, in cases where the debt was not barred, and the debtor was at that time without the state, and the time limited by the statute was in progresss of running, that it should be arrested until the return of the debtor; and of this we express no opinion.

Judgment reversed and judgment for defendant.

BENNETT, J. Dissenting.—The law of limitation is no part of the contract, but relates to the remedy, and the *lex fori* governs, and of course the inquiry must be, what law is in force at the time the remedy is sought? It is no objection to a statute of limitation, that it is retrospective in its operation, or in its provisions. The distinction is well taken between those laws which affect the right, and those which simply relate to the remedy; and the general rule seems to be, that when a statute of limitation is passed or altered, it operates upon antecedent, as well as subsequent causes of action, unless by its terms it is restrained to the latter. The common law courts have decided that the statutes of limita-

tion, having begun to run, continue to run, notwithstanding the debtor may have subsequently gone beyond the reach of process. The result has been, that the creditor has been frequently barred of his claim, when not chargeable with negligence. The same course of decisions has obtained under the act of 1797, in this state. To obviate the mischiefs of such a course of decisions, the act of 1832 was passed. This act provides, that if any person, against whom *there is,* or may be, any cause of action of a personal or transitory nature, *shall go from this state* before such cause of action shall be barred by the statute of limitations, and shall not have known property, &c., the statute of limitations shall not run against such cause of action during the absence of such person from this state. The expression in the statute " against whom *there is,* or may be any cause of action, &c.," shows that the legislature intended to subject to its operation antecedent debts ; and I think, the act of 1832 was designed not only as a rule of construction, but as a substitute for the provisions in the 10th section of the act of 1797, relative to persons beyond seas, without any of the United States. The words, " shall go from this state," must be taken only as equivalent to the words, *shall be out of the state.* If not so, the statute would not embrace foreigners who could not be said, literally, to go from the state. So the expression in the English statute, and those of some of the states which use similar expressions, " *return to,*" have been held to include foreigners who have never been in the state. *Strithoost* v. *Graeme,* 3 Wilson, 145. *Hall* v. *Littell,* 14 Mass. 203. *Ruggles* v. *Keeler,* 3 John. 263.

Indeed in settlement cases, where the courts have been disposed to be strict in their construction, we have held, that the expressions " *coming and residing within this state,*" in the act of 1797, are satisfied with an actual residence of a person who was an inhabitant of the state prior to and at the passage of the act. *Burlington* v. *Calais,* 1 Vt. 385. *Starksboro'* v. *Hinesburgh,* 13 Vt. 222.

The defendant, in this case, left the state before the action was barred, and his case is within the mischief of the old law, and, as I think, comes within the letter and spirit of the act of 1832. To confine the operation of the statute to cases where the debtor left the state after the passage of the

CHITTENDEN, act, would be to leave the case of foreigners, who had never
January, been within-the state, without provision, even though their
1842. debt may have been contracted since the act was passed.

Lowry ·This statute is remedial, and should be liberally construed,
*v*
Keyes. so as to be co-extensive with the mischief; and, as I conceive,
all cases, where the debtor has been without the state, before
the demand is barred, come within its provisions. It is said,
however, that in this case the demand was barred before the
passage of the act of 1832; and that, in such case, this act
should not remove the bar, or, in other words, the case does
not come within the act. I have no doubt it is competent
for the legislature to repeal or annul limitation acts at pleasure.
They do not impair the obligation of the contract, and to
repeal them is not to abridge the remedy, but to confirm an
existing right by removing a statutory bar, which was sup-
posed to be founded in policy, and established as a punish-
ment for the negligence of the creditor. *Ex post facto* laws,
within the meaning of the U. S. constitution, include only penal
statutes; and, to me, it seems absurd to hold that the debtor
has a vested right in a statutory law, founded upon no act of
his, so as to render, for this cause, a statute, retrospective in
its operation, objectionable. The limitation statutes, so
peculiarly relate to the remedy furnished by courts, that a
foreign statute, though it may have closed upon the demand,
before the removal of the party to the new jurisdiction, yet
will not avail him there. The defendant, to succeed in his
defence, must make out a statute-bar, at the time, and in the
forum where the remedy is sought. And it is not, I appre-
hend, sufficient that the demand has once been barred. As
the defendant's case, in my opinion, comes within the reason
and the spirit of the act of 1832, he has failed in his defence.
And indeed this is not a hard case for him. He left the state
soon after the right of action accrued; no pretence that he
had been back till the time he was arrested; no pretence
that the demand had been paid; and the defence is put
purely upon the statute. Under such circumstances, I am
disposed to hold that it is incumbent upon the defendant to
make out a clear defence, before he shall bar the plaintiff's
action; and I should affirm the decision of the county court,
accepting the report of the auditor.