SALMON WIRES AND W. W. PECK *v.* JOHN M. FARR.

*Pleading. Statute of Limitations. The Act of* 1832.* *And the Statute of* 1797.

A replication, to a plea of the statute of limitations, which closes by tendering an issue, "that the present suit was commenced within six years next after making "the promises, and next after the cause of action had accrued, saving the time "defendant was out of the State, as aforesaid," cannot be sustained, as the plaintiff, if defendant takes issue, on trial can avail himself, in making out the issue on his part, of any absence of defendant from the State *prior* to the act of 1832,* which he is not entitled to do.

Though the act of 1832, embraces cases where the cause of action accrued before the passage of the act, and applies to persons, who were out of the State at the time of its passage, as well as to those, who afterwards left the State; yet, it

cannot by a *retrospective* operation, defeat any right which had accrued under the statute of 1797, to insist upon that statute as a bar, and which had become complete before the passage of the act of 1832.

It is immaterial whether the statute bar was complete or not, when the act of 1832 was passed, as that act simply suspends the effect of the statute of 1797, from and after its passage, in those cases which fall within its provisions.

A party, in making out the statute bar, is entitled to have the time computed, that he was out of the State, before the act of 1832* was passed, and after the cause of action had accrued.

XXV.     4

Wires and Peck *v.* Farr.

* The Act of 1832, (see Comp. Stat. of 1850, chap. 61, sec. 14,) is as follows:—
" That if any person, or persons, against whom there is, or may be, any cause of
" action of a personal or transitory nature, shall go from this State, before such
" cause of action shall be barred by the statute of limitations, and shall not have
" known property within this State, which could by the common and ordinary
" process of law be attached, the statute of limitations shall not run against any
" such cause of action during the absence of such person, or persons, from this
" State; but the time of such absence shall be deducted, in deciding whether any
" such cause of action is barred by the statute of limitations."

ASSUMPSIT. The declaration contained two special counts on
notes, and the money counts.

The defendant pleaded the general issue, and special pleas of
the statute of limitations. The plaintiffs replied, joining issue on
the first plea, and specially as to the other pleas. The defendant
demurred to the replication† in part, and rejoined as to the residue

† The replication of the plaintiffs was as follows:
"And the plaintiffs, as to the several special pleas by the defendant, further
above pleaded, say, that they, the plaintiffs, by reason of anything by the defendant
in those pleas alledged, ought not to be barred from having and maintaining their
aforesaid action thereof against the defendant, because, they say, that before, up
to, and at, the several times, when the said several promises and undertakings,
mentioned and set forth in the plaintiffs' declaration, were made, and the several
times when the causes of action accruing thereon, did accrue, the defendant was
residing as a citizen of this State at Vergennes, in the county of Addison; that
within six years after the several times when said promises and undertakings were
made, and the said causes of action did accrue, to wit, on the 1st day of January,
A. D. 1833, the defendant abandoned and ended his said residence at Vergennes,
and within the State, and went with his family out of this State, into the State of
New York, to wit, to Essex, in the county of Essex, in said State of New York.
That since he, the defendant, ended and abandoned his said residence as aforesaid,
and since the day and year last mentioned, and for a long space of time then next
following, to wit, up to and until, the 27th day of November, A. D. 1849, the de-
fendant has resided out of the State of Vermont, to wit, at said Essex, and during
all that time, to wit, from the 1st day of January, A. D. 1833, until the said 27th
day of November, A. D. 1849, has been absent from, and has not been within or
returned into this State. And the plaintiffs further aver, that before and at the
time of making the said several promises and undertakings, and of the accruing of
the said several causes of action thereon, and from thence up to and until the de-
fendant ended and abandoned his said residence within this State, as aforesaid,
and went into the State of New York, to wit, upon the said 1st day of January,
A. D. 1833, up to and until the time of his return into this State, as hereinafter
mentioned, to wit, upon the said 27th day of November, A. D. 1849, and while he
was absent from, and without this State, as aforesaid, the defendant had not within
this State any known property, which could by the common and ordinary process
of law, be attached. And the plaintiffs further aver, that afterwards, to wit, on

specially.   The plaintiffs joined in the defendant's demurrer, and demurred to the rejoinder, in which last mentioned demurrer defendant joined.   The county court, September term, 1851,—Poland, J. presiding,—adjudged the rejoinder and replication severally insufficient.   Exceptions by plaintiffs.

*Wires & Peck* per se.

1. The case is within the act of 1832.   The act embraces those cases in which the causes of action had accrued, when the act was passed, and the absence had commenced by going out of the State intermediate with the accruing of the cause of action, and the passage of the act, provided the cause was not then barred; and it is therefore immaterial whether the replication shows the absence to have commenced after the passage of the act.   The question, presented by this case, is left open by that of *Lowry* v. *Keyes*, 14 Vt. 66.

2. When the terms of a statute vary from its spirit, it is to be construed by the latter, and that is to be ascertained, by regarding the nature of the evil to be remedied, the old law and the remedy.

The old law, the statute of 1797, did not provide for cases, in which the debtor should leave the State after the accruing of the cause of action; and in that class of cases the remedy was nominal, not a matter of right to the creditor, but dependent on the will of the debtor.   This mischief existed at the passage of the statute of 1832; the intent of the Legislature must have been to correct it, both as to cases existing and not barred, and to future cases.

the said 27th day of November, A. D. 1849, he, the defendant, then still residing out of this State, as aforesaid, to wit, at said Essex, casually and transiently entered and returned into this State, to wit, at said Burlington.   And the plaintiffs further say, that after the defendant had so casually and transiently entered and returned into this State, as aforesaid, and upon the said 27th day of November, A. D. 1849, and within six years after the making of the said several promises and undertakings, and the accruing of the said several causes of action thereon, saving and excepting the time during which the defendant resided out. of, was absent from and without this State, as aforesaid, to wit, at said Essex, they, the plaintiffs, commenced this suit against the defendant, and caused the original writ therein to be served upon the defendant, by arresting the body of him, the defendant, to wit, at said Burlington.   And this the said plaintiffs are ready to verify; wherefore they pray judgment, and their damages by them sustained on occasion of the non-performance of the said several promises and undertakings, in the said declaration mentioned, to be adjudged to them, &c."

*Again*, this act in terms embraces existing cases, and there is nothing to restrain its operation, as a remedial act, upon an existing mischief. This construction does not conflict with the principle of *Lowry* v. *Keyes;* because, if when a case is barred, the debtor has acquired a right of exemption, and that cannot be disturbed, *it being a vested right*, here, the right was but *accruing,* when the act was passed.

If, however, the cause having become barred a right has not vested in the debtor, it would require unequivocal language to extend a subsequent act to them, and for that reason alone. But the reason does not apply to a cause existing, but not barred. *Bottles* v. *Forbes*, 18 Pick. 332. S. C. 19 Pick. 578. *Wright* v. *Oakley et al.*, 5 Met. 400. *Willard* v. *Clark*, 7 Met. 435. *Bingham* v. *Bigelow*, 12 Met. 268. *Darling* v. *Wells*, 1 Cush. 508.

3. The expression "return into," in the act of limitations, is treated as synonymous with "come into." For the same reason "go out," should be treated as synonymous with "be out." It is the absence of the debtor from the State, however it arises, which creates in the intent of the law, the exemption. So construed, the act of 1832, will read, if the debtor "shall be out of the State;" and will then embrace absences commencing after its passage, and those existing, and thereafter continuing. —— v. *Grame*, 3 Wils. 145. *Deming* v. *Chamberlain*, 6 Vt. 127. *Lowry* v. *Keyes*, 14 Vt. 66. *Graves et al.* v. *Weeks*, 19 Vt. 178. *Little* v. *Blunt*, 16 Pick. 359. *Ruggles* v. *Keeler*, 3 Johns. 263.

*Peck & Bailey* for defendant.

1. The averment as to the time defendant left the State is not material or traversable as alledged, and plaintiffs are not tied to the day alledged; and so as to the period of time alledged that he resided out of the State, it is uncertain in this respect. *Britton* v. *Bishop et al.*, 11 Vt. 70.

2. The same objection lies to the averment that the defendant was without property, as it only refers to the averment as to residence out of the State and can be no more certain. Nor is it alledged, that defendant was without property during the *whole* time of such residence out of the State. Proof of the time short of the whole, would support the replication if issue were taken upon it.

3. The averment that defendant was without property, covers the period of time, before he left the State, as well as after, and all embraced in one averment, so that no issue can be taken, as material and immaterial matter are blended together upon it; it differs from mere surplusage in a *distinct* and *separate* averment.

4. These defects were not cured by the averment, that the action was commenced within six years after the cause of action accrued, (exclusive of the time defendant resided out of the State,) as that averment does not contain the qualification, (without any known property, &c.)—so that the issue must be, if taken on this averment, simply on the fact of residence out of the State, without reference to the question or fact of the defendant's having property in the State. Nor can the issue be either upon the residence *alone,* or the want of property *alone;* as it is not either, *alone,* that entitles the plaintiffs to deduct the time, but the combination of both at the same time,—the one may not be co-extensive in duration with the other. So that this last averment should not be "*exclusive* of the time defendant resided out of the State," but merely exclusive of the time he resided out of the State having no known property, or the time he resided out of the State while or during which, he had no known property.

5. The replication excludes in the computation all the time defendant resided out of the State. A portion of this time may be before the statute of 1832 went into effect, or was passed, especially as it appears by date of the note, that cause of action accrued before that statute was passed. Statute is not retrospective, and the time defendant was out of the State before the act passed must be computed in the six years—and if so, it does not appear but that including such time the statute has run upon the demand—and hence the replication is no answer to the plea. *Lowry* v. *Keyes,* 14 Vt. 66.

6. The replication, if not good as to all the counts, is bad *in toto.*

7. The cause of action having accrued before the act of 1832, that act does not apply to it. The replication being *bad,* judgment should be for the defendant, both on the demurrer to the replication, and on the plaintiffs' demurrer to the defendant's rejoinder; as to the common counts it does not appear, but that the action was barred before the statute was passed; the replication ought to have alledged that the absence from the State was since that statute.

The opinion of the court was delivered by

BENNETT, J. We think, the replication to the pleas of the statute of limitations, cannot be sustained. The replication closes, by tendering an issue, that the present suit was commenced within six years next after making the promises, and next after the cause of action had accrued, saving the time defendant was out of the State, *as aforesaid.* If we give effect to the words, *as aforesaid,* as being equivalent, when taken in reference to the averments in the replication, that the defendant had no known property in this State, which could be attached by the common and ordinary process of law, while out of the State himself, yet the replication cannot be sustained, consistently with the construction, which we think should be given to the act of 1832.

By the act of 1797, the notes would have been barred, though the defendant left the State in the manner alledged, within the six years. Under the act of 1797, the statute, having commenced running, was not arrested, though the party subsequently removed out of the State.

By the act of 1832, if any person, against whom there was, or might be any cause of action, shall go from this State before such cause of action shall be barred, and shall not have *known property* within the State, which, &c., the statute of limitations shall not run against such cause of action during the absence of the person from the State. The act of 1832, no doubt embraced cases, where the cause of action accrued before the passage of the act, and applied to persons who were out of the State, at the time of its passage, as well as to those, who afterwards left it; yet we think, that it should not, by a *retrospective* operation, defeat any rights, which had accrued under the act of 1797, to insist upon that statute, as a bar, and which had become complete before the act of 1832 was passed, and that it was not the intention of the legislature, that it should have such an effect. It was so held in the case, *Lowry* v. *Keyes,* 14 Vt. 66; and we now hold, that it is immaterial, whether the statute bar was complete or not, when the act, of 1832, was passed, which simply suspends the effect of the statute of 1797, from and after the passage of the act of 1832, in those cases, which fall within the provisions of the act of 1832.

The defendant, in making out the bar, is entitled to have the time computed, that he was out of the State before the act of 1832,

was passed, and after the cause of action had accrued. But if the defendant had taken issue upon the replication, the plaintiffs might have, on the trial, availed themselves in making out the issue on their part, of any absence from the State *prior* to the act of 1832. This they were not entitled to do. It is consistent with the pleadings, that the defendant left the State, the very next day after the giving of the last note, in January, 1831; and on these pleadings, we may intend such to have been the fact. If it had been alledged, that the defendant left the State within six years from the making of the promises, and from the time that the several causes of action accrued, and after the passage of the act of 1832, not having any known property which could have been attached, and that the action was commenced within *the six years,* deducting the time the defendant was out of the state, not having any known property within it, &c.; it would seem that there could be no objection to the replication in this particular.

The result is, there is no error in the decision of the county court.

But on motion, the judgment of the county court was reversed *pro forma,* and a repleader was awarded on the usual terms.