ADDISON,<br>January,<br>1841.<br><br>Starksboro'<br>v.<br>Hinesburgh.

Judgment affirmed.

---

Town of STARKSBORO' *v.* Town of HINESBURGH.

To gain a settlement, under the act of 1797, by the payment of taxes, there must have been an *assessment* and *payment.*

*Quære*, whether the assessment and payment of a highway tax, in labor, is a *public* tax within the meaning of the statute ?

The expression in the statute, " *coming and residing within this state*" extends to a person residing within the state at the time of the passage of the act, and not having a settlement in it. And a residence of one full year, under the act of 1797, in the town to be charged, is sufficient.

The repeal of the first section of the act did not affect settlements which had then been acquired under it.

THIS was an appeal from an order of removal, made by the town of Starksborough, of one Lyman Bostwick and wife, to the town of Hinesburgh. Plea, that the pauper was unduly removed, and trial by jury.

On the trial in the county court, the plaintiffs claimed that the pauper had a settlement in Hinesburgh, under the act of

1797, and introduced the pauper as a witness, whose testimony, in substance, was, that he was born in Connecticut, in the year 1768, where he resided till about 1790, when he removed to Essex, Vermont, and resided there till January or February, 1797 or 1798, when he moved to Hinesburgh, and lived there till March, 1802, whence he removed into the state of New-York, and resided there, and in other places, some of which were in this state (but not material, as neither party claimed any settlement gained in this state after the pauper left Hinesburgh, as aforesaid, in 1802,) till May, 1832, when he moved to Starksborough, where he had resided ever since. The plaintiffs offered to prove, by said pauper, that, during his said residence in Hinesburgh, he paid highway taxes, by laboring on the highway ; to which showing the defendants objected, and claimed that it must first be shown that he was assessed, or put in the list, or was legally charged with such tax. The objection was overruled, and the testimony admitted. The pauper then testified that, during his residence in Hinesburgh, he was called on by the highway surveyor, and labored on the highway ; but no evidence was offered to show that he ever had any list, or that any taxes were ever made up against him. He also testified that, during such residence, he supported himself and family, and had good bodily health, except that he was occasionally troubled with a lameness in his hip, which the physicians called rheumatism, and which had troubled him ever since he was twenty-one years old ; that he did military duty in Hinesburgh, and that he had become chargeable to Starksborough when removed. No other evidence was introduced.

Upon this testimony, the defendants insisted that they were entitled to a verdict. The county court so directed, and a verdict was taken that the paupers were unduly removed ; to which decision of the court the plaintiffs excepted.

*E. D. Barber* and *H. Needham,* for plaintiffs.

The paupers were settled in Hinesburgh under the following clauses of the act of 1797.

1. Every person who " shall have been charged with and paid his or her share of the public rates or taxes of such town or place, for the space of two years" shall be deemed to have gained a settlement in such town.

2. "And every other healthy, able bodied person coming, and residing within this state, and being of a peaceable behavior, shall be deemed and adjudged to be legally settled in the town or place in which he or she shall have first resided, for the space of one whole year."

The case shows that the pauper, Bostwick, was called upon by the highway surveyor and labored on the highway during his residence in Hinesburgh, which was for the space of about five years. This, we contend, shows that he was *charged* with public rates or taxes and paid them for the length of time required by the statute. The payment of highway taxes for the term required by the statute, confers a settlement. *Andover* v. *Chelmsford,* 16 Mass. R. 236. Metcalf's Statutes of Mass. 432.

The case shows that the pauper came within the provisions of the act of 1797, last above quoted. The terms '*healthy*' and '*able bodied*' are relative terms and do not import perfect health, strength and soundness of body.

The statute provision undoubtedly embraced all those who had such health and bodily vigor, as not to render them liable to become chargable to the town within the time prescribed. Any other construction would exclude a person from the provisions of the statute, if such person should have any complaint, which might tend to impair his health or constitution, though not at the time affecting his ability to labor.

The statute of 1797 is prospective in its operation, and provides for the future gaining of a settlement, whether a person had a settlement at the time of its passage, or not. *Burlington* v. *Calais,* 1 Vt. R.385. And if it did not apply to those who had already gained a settlement, it does not appear, from the case, that the pauper had a settlement previously under the act of 1787. The language of that act is, "That no person shall gain a settlement in any town in this state, and be liable to be supported thereby, unless such person was born therein, or has owned, or shall own estate in such town of the value of two hundred pounds, clear of all demands against him or her, or of the yearly value of ten pounds."

It is said that the act, repealing the law of '97, contains no clause saving the rights and liabilities acquired and incurred under it, and that, therefore, a settlement, gained while the act was in force, became void on its repeal. If so, then every

thing which grew out of a settlement, acquired under that act, must share the same fate.

It is well settled that the repeal of a statute can have no effect upon a contract made while it was in force. *Springfield* v. *Merrick et al*, 14 Mass. 323. 1 H. Black. 65. A law cannot have a retrospective effect. 1 D. Chip. 137. 2 Do. 77. 2 Aik. 284. 7 Johns. 477. But if a law repealing a previous statute, without an express saving of rights acquired under it, is to be construed as unsettling every thing that has been settled under its operation, it must, most certainly, have a retrospective effect. A statute is not to be construed so as to work a distruction of a right previously attached. *Gilman* v. *Shuter*, 2 Mod. 214. *Bradleston* v. *Sprague*, 6 Johns. 101. 4 Burrows, 2460. Puffendorf, as quoted by Kent C. J. in 7 Johns. above cited, says. "A law can be repealed by the lawgiver, but the rights which have been acquired under it, while it was in force, do no not thereby cease. It would be an act of absolute injustice to abolish, with a law, all the effects which it had produced."

*Hyde & Peck*, for defendants.

1. The pauper gained no settlement, under the act of 1797, by payment of taxes. To gain a settlement under this provision, two things are necessary, first, the being charged with his share of the public rates or taxes, and, secondly, the payment of such taxes. The first is the act of the town, and the last the act of the pauper, and both must concur to give a settlement. Proof of the payment of taxes is not the proper evidence that the pauper was charged with taxes, and does not tend to establish the fact, without first showing, at least, that he was set in the list, so that he could have been legally assessed. Comp. St. p. 429, sec. 5. Laboring on the highway is a personal service, like the performance of military duty, and many other similar burdens imposed on citizens, and not the payment of taxes within the meaning of the statute. The term *pay*, imports a pecuniary contribution. Under the English statute, 3 and 4 W. & M. ch. 11, sec. 6, of which ours is a transcript, these questions have been determined. Eng. St. 3 vol. p. 476. *Rex* v. *In. of Sarratt*, Burr. Set. C. 73. *Rex* v. *In. of Carshalton, id.* 809. *Rex* v. *In. of St. Cuthberts, id.* 817.

*Rex* v. *In. of Stanlake, id.* 627. 5 Jac. L. Dic. 221. *Overseers of Amenia* v. *Overseers of Stanford,* 6 Johns. 92.

2. The provision for gaining a settlement, by a year's residence, is either prospective, and confined to persons coming into the state after the passing of the act, or retrospective, and gave the pauper a settlement in Essex, which settlement cannot be changed under this provion of the statute. Statutes, relating to settlements, are to be construed strictly. 1 T. R. 460, per Ashhurst, J.

It is evident the legislature intended to prescribe a rule for the settlement of emigrants, different from that which applied to citizens, moving from town to town, and intended to cast the burden of supporting such emigrants upon the town where they first fixed their residence. It may have been thought just and politic to make such town chargeable, whose inhabitants, in their anxiety to procure settlers, may have been instrumental in procuring such persons to settle in the state, or it may have been to encourage imigration. If this is not the construction, it renders nugatory the provisions of the statute. Other states have had similar laws. By the act of New York, of 1801, a healthy, able bodied person, " coming from a foreign port or place," gained a settlement by one year's residence, while, as to other persons, two years residence and the payment of taxes, was requisite. 19 Jons. R. 56. This construction is not opposed by the case of *Burlington* v. *Calais,* as, in that case, Calais was the first and only town in which the pauper resided one whole year.

3. If the pauper gained a settlement in Hinesburgh, under the act of 1797, the express and unqualified repeal of the act, in 1801, without a saving of settlements gained under it, terminated the settlement. A right or liability created by statute, and not completely enforced, is divested by a repeal of the statute, unless the statute is in the nature of a contract, and absolute rights have vested under it. The same principle applies where a statute gives a cumulative remedy for a right existing at common law. Towns are public or political corporations, created for public purposes, and it is competent for the legislature to alter, amend, or repeal all laws relating to them. Laws relating to paupers, fixing the

relative rights and liabilities of towns, are police regulations of a public character, and arbitrary in their nature, being founded on no pre-existing right or equity ; and all questions arising under them must be determined by existing laws. *Yeaton, et al.* v. *United States,* 2 Pet. Cond. R. 256.   *The Rachel* v. *United States,* 2 Pet. Cond. R. 388.   *Commonwealth* v. *Bird,* 12 Mass. 443.   *Palmer* v. *Overseers of Coxsackie,* 3 Wend. 193.   *Id.* 201, (note.)   The legislature must be taken to have intended the legal consequences of their act, especially as in all other cases of a repeal of a settlement law, they have inserted a clause saving settlements gained under it.   Comp. St. p. 383, sec. 6, p. 385, n. 8.   p. 382, proviso to sec. 1.   R. St. ch. 111, sec. 5, p. 510.   *Id.* ch. 13, sec. 5.   See Mass. St. vol. 1, p. 431. Act of 1793, ch. 33, sec. 1.

The opinion of the court was delivered by

BENNETT, J.——It seems the pauper was born in Connecticut, where he resided until about the year 1790, when he removed into Essex, in this state, and resided in that place till 1797 or 1798, when he removed into Hinesburgh, where he resided till March, 1802 ; and the inquiry is, whether he gained a settlement in Hinesburgh under the act of 1797. It is contended, on the part of Starksborough, that the pauper gained a settlement in Hinesburgh, under that clause of the statute of 1797, which enacts that a settlement may be gained in cases where the person " shall have been *charged* with, and *paid* his or her share of the *public rates or taxes* of such town or place, for the space of two years." All that the case shows in this respect, is, that the pauper, during his residence in Hinesburgh, was called on by the highway surveyor, and labored on the highway.   There was no evidence that he ever had a list, or that any taxes were ever made up against him.   The English statute of the 3d W. & M. has a similar provision, from which ours was probably copied.   The words of the English statute, are, " or shall be charged with and pay his share towards the *public* taxes or levies of the said town or parish."

In England, it has been held, that a tax assessed for the repair of highways, is not a *public* tax, within the meaning of this statute, and, consequently, the payment of such a

tax will not entitle the person to a settlement under their statute. 5 T. L. D. 221. The statute of 1801, in New York, was the same, in its provisions, as ours, and, in the case of Amenia v. Stanford, 6 Johns. R. 92, it is also held that the assessment and performance of labor on the highway, is not the payment of a tax, within the meaning of the statute. The word *taxes*, it is said, means a contribution in money, and not labor or personal services.

If it was necessary to decide the question, perhaps the same construction would be given to our statute. But, in the case now before us, it does not appear that the pauper had been assessed, or, in the language of the statute, *charged with* the payment of any tax. For ought that appears, the labor performed by the pauper might have been gratuitous. The authorities are very ample to show that there must have been an assessment of a tax against the person paying it, as well as the payment, in order to acquire a settlement under the statute. Besides, all that the case shows, is, that the pauper was called upon, during his residence in the town, by the surveyor, and that he labored on the highway. The statute requires that he should pay *his share* of the public taxes for the space of two years; and it would, probably, be held two successive years. This has not been done, and the pauper has gained no settlement under this clause of the statute.

Though the pauper resided several years in Essex, before the passage of the act of 1797, yet, it cannot be pretended that he gained a settlement in that town, by such residence, under the act of 1787. That statute makes property a necessary qualification in gaining a settlement. The pauper resided in Hinesbugh more than a year, while the act of 1797 was in force, having no settlement in the state, and for aught that appears, was an able bodied person, and of peaceable behavior. The first section of this statute provides for several different modes in which a settlement may be gained, the last of which is that " every other healthy, able bodied person, coming and residing within this state, and being of peaceable behavior, shall be deemed and adjudged to be settled in the town or place in which he or she shall have *first* resided for the space of one full year." It has been contended that this provision is prospective, and only extends to

persons coming into the state after the passage of the act. It no doubt is prospective, and was intended to provide for, and be extended to only, those cases where the person had no settlement in any town in this state. But, to hold that its provisions cannot apply to such persons as were in the state, at the passage of the act, who had no settlement in it, would, indeed, be illiberal. The expression, "in which he or she shall have *first* resided one full year;" may mean first after the passage of the act. The paupers, being and residing in Hinesburgh one full year, while the act of 1797 was in force, was tantamount, in spirit and essence, to coming and residing. The case of *Burlington* v. *Calais*, 1 Vt. Rep. 385, is to the same effect, and must govern this case.

It has been insisted, in argument, that, though the pauper may have gained a settlement under the first section of the act of 1797, still, as that section was repealed in the fall of 1801, without any saving clause as to rights of settlements already gained, the effect of the repeal must be to terminate such settlements with the act itself. But we cannot concede to this proposition. It is well settled law, no doubt, that after the expiration or repeal of a statute, no penalty can be enforced for violations of the law, while it was in force, unless there is some express provision for that purpose, and of this character are the two cases to which we have been referred in 2 Peters' Cond. United States Rep. That principle can have but little or no analogy to the question under consideration. The pauper, by gaining a settlement under the act of 1797, acquired a right, while it was in force. It is a principle of the English common law, that a statute should have a prospective and not a retrospective effect; and in the case of *Beadleston* v. *Sprague*, 6 Johns R. 101, the court say, "a statute is not to be construed so as to work a destruction of a right previously attached." Though one legislature may repeal the laws of another, yet the rights which have been acquired under them, while in force, do not thereby cease. It would, indeed, be the height of injustice to abolish with a law, all the effects which it had produced.

The legislature, by the repealing act, have not professed to give it a retrospective effect. It leaves the rights of all persons, under the act of 1897, just where it found them, and

the repeal can no more affect those rights than if the act had expired by its own limitation.   The repealing act has a reasonable object, and a full operation, prospectively ; and it would be a subversion of all principle, to give it a retrospective effect, by construction, to the destroying of rights previously acquired, and then perfect.   That, in the repeal of other settlement laws, there has been a saving clause, as to settlements then acquired, proves nothing.   This proceeded from abundant caution, rather than from a recognition of its indispensable necessity.   The case cited from 12 Mass. R. *Commonwealth* v. *Bird*, is not in point.   The question there, was, whether the legislature had the power to revoke an exemption from the performance of military duty, which had existed under the former laws.   That they had undertaken so to do, was regarded too clear to admit of a doubt.   The result then, is, that there is error in the decision of the county court, in directing a verdict for the defendant.   The judgment of that court is reversed, and the cause remanded for a new trial.