## STATE OF MAINE *vs.* WATERVILLE SAVINGS BANK.

### Kennebec. Decided November 30, 1878.

*Tax. Savings banks.*

The trustees of the defendant bank, on April 29, 1876, voted to close the bank to paying or receiving deposits for the present, and arranged with the depositors to scale down their deposits 12½ per cent, the depositors exchanging their books for new ones, and to credit them with 87½ per cent on their deposits, as of April 29. These arrangments being consummated, the bank, on November 14, 1876, resumed business; and its treasurer returned the reduced amount to the state treasurer, upon which a tax was assessed.

*Held,* that the assessment was valid and binding; that the tax having been legally assessed and due, a right of action existed by statute for its recovery, and that the repeal of the act, under which the assessment had been made did not vacate a previous assessment duly made under then existing statutes, for the recovery of which a right of action was given.

ON REPORT.

DEBT, to recover tax due on deposits from May, 1876, to November, 1876. Writ was dated February 1, 1878.

The trustees, finding that the bank was insolvent, voted, April 29, 1876, to " close the bank to receiving or paying deposits for the present." No deposits were received or paid until November 14, 1876, when business was resumed, in accordance with a vote of the trustees passed October 5, 1876. After the suspension, and while the bank examiner was giving directions in regard to conducting the affairs of the bank, and between May and November, negotiations were carried on with the depositors to " scale

down" their deposits twelve and one-half per cent, and agreements were signed by which depositors agreed to exchange their books for new ones crediting them with $87\frac{1}{2}$ per cent of their deposits. These arrangements were consummated so that, November 14, 1876, the exchange of deposit books commenced, and the depositors' accounts were reduced twelve and one-half per cent, as of April 29, 1876.

The treasurer of the bank returned this reduced amount to state treasurer, in November, 1876, viz: $365,828.40, on which amount a tax to the state was duly assessed amounting to $1,829.14. which, if valid and binding on the bank, was due and payable December 15, 1876, and which was duly demanded and remains unpaid.

*L. A. Emery*, attorney general, for the state.

*J. H. Drummond*, for the defendants.

The statute of 1875, c. 47, § 1, in amendment of preceding statutes, provides that "every savings bank in this state shall return under oath to the state treasurer the average amount of its gross deposits as held on the first Saturday of each and every month for the then last preceding six months," etc., " and if any bank neglects to pay when due a warrant of distress may issue." This law of 1875 gave the right to tax. The statute of 1876, c. 115, § 1, gave the remedy by action invoked here. The statute of 1875 giving the right, was repealed by c. 218 of laws of 1877, without a saving clause. Being a right created by statute and existing only by virtue of the statute, its repeal defeats the right itself, not already vested by a judgment. *Butler* v. *Palmer*, 1 Hill, 324, quoted from in *Coffin* v. *Rich*, 45 Maine, 507, 512. In this case, there was no judgment and no suit commenced before the repeal.

*L. A. Emery*, in reply.

In *Coffin* v. *Rich*, there was no contract or privity between plaintiff and defendant, and no judgment before the repeal of the statute. The plaintiff had no right of action against the stockholder until he got his judgment against the corporation. The statute giving the action against the stockholder was repealed in

1856. The plaintiff obtained his judgment against the corporation in March, 1857. Before his right could arise the statute was repealed. Here the tax and the right to have it were in existence before the repeal. Though a tax is not technically a judgment, it is in the nature of a judgment, it was assessed, the warrant of execution could issue, the state could take, the right was vested. Not judgments only, but rights by contract, and rights to compensation, are saved from the consequences of repeal.

APPLETON, C. J. This is an action of debt, to recover the assessment the defendants were required to pay the state treasurer under the provisions of c. 47, § 1, of the acts of 1875.

The organization of the bank was admitted. The trustees of the bank, finding it insolvent, temporarily closed it, and then, under the advice and direction of the state bank examiner, entered into negotiations with the depositors, the result of which was that the deposits were reduced twelve and one-half per cent, and the depositors exchanged their books for new ones crediting them with eighty seven and one-half per cent of their original deposits. These arrangements were consummated so that, on November 14, 1876, the depositors' accounts were reduced twelve and one-half per cent, as of April 29, preceding.

The bank treasurer returned the reduced amount to the state treasurer, in November, 1876, upon which the assessment provided by statute was duly made, which being duly demanded and payment refused, this action, authorized by c. 115, § 1, of the acts of 1876, was commenced.

No proceedings had been instituted by the bank examiner for the purpose of sequestrating the assets of the bank. For a brief term, the directors were arranging with the depositors for the reduction of the deposits; but they were acting as officers of the bank. There was no interference with the chartered rights and privileges of the bank. Its investments were untouched. The interest on its loans was continuing. The value of its assets remained unimpaired. They should equitably bear their proportion of the expenses of the government which protects them.

The treasurer of the defendants returning " the average amount

of its gross deposits " in accordance with the statute, it became their duty "to pay the state treasurer." In case the "bank neglects to pay said tax when due," the treasurer is authorized to issue his "warrant of distress to enforce payment out of its estate and effects." The bank is to pay to the state treasurer. It is in default if not done.

Here, then, there was an existing, vested right in the state, enforceable by warrant of distress or by action at law. Here was a sum of money due the state, which the defendants were legally bound to pay. It is not denied that this right on the part of the state, and this duty on the part of the defendants, continued in force to the passage of the act of 1877, c. 218, by which the preceding acts relating to savings banks were condensed into the last named statute. It is, however, claimed that by the repeal of prior legislation on this subject, the state has released, discharged, or in some way lost its right to the sum the defendant corporation was previously bound to pay. Is such the case ?

The act of 1877, c. 218, is entirely prospective in its operation. It repeals existing law, but it does not repeal or annihilate existing and vested rights. In *Steamship Co.* v. *Joliffe*, 2 Wall. 450, which was a suit to enforce a claim arising under a statute, which had been repealed, Field, J., in delivering the opinion of the court, says : " The claim of the plaintiff below for half pilotage fees, resting upon a transaction regarded by the law as a *quasi* contract, there is no just ground for the position that it fell with the repeal of the statute under which the transaction was had. Where a right has arisen upon a contract, or a transaction in the nature of a contract, authorized by statute,. and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. It becomes a vested right, which stands independent of the statute." In that case pilotage services had been tendered but not rendered, but the claim for compensation arose upon the tender, and it was not lost by reason of the repeal of the statute.

It was held in *Belvidere* v. *Warren R. R. Co.*, 34 N. J. 193, that when a statute authorizing the laying of a tax was repealed,

after an assessment of such tax, that the repeal did not prevent the collection of such tax, such collection being regulated by the general tax law which remained unrepealed. In the case before us, the act of 1876, c. 115, under which this suit is brought, remains in full force. The remarks of Beasley, C. J., in the case last cited, are fully applicable to the one at bar. " When therefore, this assessment was made, the force of the act of 1862 with respect to it was wholly spent and exhausted ; the thing authorized to be done was completely done ; and," he adds, " the consequence is that, even on the most stringent application of the rule as claimed, a repeal of the statute cannot invalidate a proceeding that was fully perfected while such statute remained in force."

The act of 1877 is a consolidation of previous laws relating to savings banks. Such a law, being prospective in its operation, cannot affect acquired rights. It cannot be imagined that it was the intention of the legislature to surrender uncollected dues. *Pacific & Atlantic Telegraph Co.* v. *Commonwealth*, 66 Penn. St. 70. It cannot be for a moment supposed that the legislature intended to discriminate against those who paid in accordance with the law and in favor of those who neglected to discharge their statutory obligations. A right acquired under a statute while in force—as a settlement—does not cease by a repeal of the statute. *Starksboro* v. *Hiramsburg*, 13 Vt. 215.

The act of 1877, c. 218, § 15, imposes the same assessment upon savings banks as was provided by the act of 1875, c. 47, § 1. There was no time in which the savings banks were exempt from the precise statute liability sought to be enforced in this action. " There was no moment in which the repealing act stood in force without being replaced by the corresponding provisions of the revised statutes," observes Shaw, C. J., in *Wright* v. *Oakley*, 5 Met. 400, 406. It matters not whether it be a revision of statutes or a condensation of statutes on a particular subject. As a question of intention, it cannot be supposed that the legislature intended to annul existing assessments by the very act by which the same assessments were continued.

The cases cited by counsel for the defendant are not adverse to the maintenance of this action. In *Com.* v. *Hampden*, 6 Pick.

501, where a special tribunal was created by an act of the legislature, and the act was repealed without any saving of proceedings commenced and pending before, it was held that the whole power of such tribunal ceased on such repeal, and that it could not proceed and finish what it had commenced. But Parker, C. J., in his opinion, says : " The position that everything done under a statute while in force remains valid, though the statute may afterwards be repealed, is undoubtedly true, but goes no further than to render valid things actually done; \but when those things themselves are merely preliminary, the principle does not authorize a further proceeding in order to render them effectual." But in the case before us, the liability had accrued. Nothing remained to be done except to discharge an existing liability. In *Com.* v. *Kimball,* 21 Pick. 373, the defendant was indicted under an act which was repealed pending the indictment, and judgment was arrested, but in delivering the opinion of the court, Shaw, C. J., says : " Where one statute is enacted in the same terms as a former one, without a repealing clause, and without any change of provisions, it may well be maintained that one is no repeal of the other, and that both are in force." The case of *Coffin* v. *Rich,* 45 Maine, 507, is relied upon, but it was overruled in *Hawthorne* v. *Calef,* 2 Wall. 10. All that is determined in *Smith* v. *Estes,* 46 Maine, 158, 159, is that an action which was brought by an administrator against one for aiding a debtor of the plaintiff's intestate in the fraudulent transfer of his property, cannot be maintained, the cause of action not surviving. In *Augusta* v. *North,* 57 Maine, 392, an act imposing a tax was repealed. An action was brought to recover the tax, but in the repealing act there was a special provision that " no proceedings under the act hereby repealed shall be hereafter enforced." Act 1869, c. 63, § 2.

By R. S. c. 1, § 3, " The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit or prosecution or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed." Much more, could it not have been the intention of the legislature to surrender what was legally and equitably due the state, when the

only purpose was to fuse various acts into one for greater convenience.

In the case of *Jones* v. *Winthrop Savings Bank*, 66 Maine, 242, it was held that the bank was not liable to taxation, on the ground that it had ceased to exist by reason of the sequestration of its assets. So, it was held in *Com.* v. *Lancaster Savings Bank*, 123 Mass. 493, that where a savings bank is in the hands of a receiver, and the bank is enjoined from transacting business, it is not liable to taxation under a statute like the one under which it is claimed in this case.

In the case before us there has been no sequestration of assets, and no injunction against the further transaction of business.

*Judgment for the state.*

WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.