MARTHA C. WOODBURY *vs*. WALTER F. WILSON.

Cumberland.     Opinion, March 4, 1935.

*Jacob H. Berman,*
*Edward J. Berman,* for complainant.
*Henry Cleaves Sullivan,*
*Philip G. Willard,* for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J. Law on exceptions. The respondent, having been found guilty on a complaint brought under the Bastardy Statute and having been ordered by the Court to stand charged with the maintenance of the child with the assistance of the mother, to pay the complainant her costs of suit, her expenses of delivery and medical attendance and her expenses for support of the child to the date of the child's adoption, (which date was prior to the date of judgment) the question now presented is, did he, to prevent his commitment to or remaining in jail, have the right to give a bond to the complainant, securing the performance of the Court's order only so far as it related to the payment for the support of the child before the adoption. The presiding Justice ruled that he had that right and consequently that the bond need not include coverage for the costs of suit and the complainant's expenses for her delivery and for her nursing, medicine and medical attendance. To this ruling the complainant excepted.

The statute involved is Section 7 of Chapter 111, R. S. 1930. By it the Court is commanded to order: (1) That the respondent, being found guilty, shall assist the mother in maintaining the child "as the Court orders"; (2) that he shall pay the complainant her costs of suit; and (3) shall pay the complainant for certain named expenses, to wit: (a) "The expense of her delivery," (b) the expense "of her nursing, medicine, and medical attendance, during the period of her sickness and convalescence," and (c) the expense "of the support of such child to the date of rendition of judgment." As

the statute uses the word "orders" with relation to the maintenance of the child and later the word "ordered" as to the payment of the costs of suit and the expenses of the complainant, it might be thought that the statute contemplates two separate orders, yet we think that the fair and reasonable construction of it is that the Court is commanded to make only one order for the benefit of the complainant to include its several elements. Therefore, when the statute says that the respondent "shall give a bond . . . to the Complainant to perform said order," it means to secure the performance of all that the Court is compelled to order. Unless so construed, we have this, we believe, unintended and amazing result— that the bond need not help to accomplish the very purpose for which the Bastard Statute was enacted, namely, to assist the mother in the future maintenance of the child.

"The object of the statute relating to bastard children and their maintenance was to compel the putative father to aid in supporting his illicit offspring." *Smith* v. *Lint,* 37 Me., 546, 547 ; *McKenzie* v. *Lombard,* 85 Me., 224, 27 A., 110.

Support of the child to date of judgment, it is admitted, must be secured by the bond, and it is hardly conceivable that the intention of the Legislature was that the bond should secure the aid for the first few months of the child's existence and not for the remainder of its minority.

The purpose of the amendment of 1909 (see P. L. 1909, Chapter 111) was to enlarge the order for the benefit of the mother and thus compel the father to render additional help in paying her for the expense of her delivery and of her nursing, medicine and medical attendance. Before the amendment, she could recover the expense of maintenance from the time of birth to judgment, *Smith* v. *Lint,* 37 Me., 546, and no doubt the costs, as assumed in *Dennett* v. *Nevers,* 7 Me., 399. The very fact that the amendment includes in the commanded order the costs of suit and support before judgment, as well as the mother's expenses, tends to show that it was intended that the bond should secure performance of the whole order. Counsel does not claim that the bond need not protect her on account of the support of the child to the date of judgment or for its future support, but contends only that the bond need not provide cover-

age for the costs of suit and the expenses of her delivery and of her nursing, medicine and medical attendance.

By his brief, he indicates that he would not make this contention "were it not for the last sentence of the section" of the statute, which reads: "If the Respondent does not comply with that part of. the order relative to payment of expenses and costs of suit, execution may issue thereafter as in actions of tort." His argument is that the fact that "execution as in actions of tort" may issue for the payment of expenses and the costs of suit, indicates an intention to relieve the respondent from the necessity of coverage of these items in his bond. Admitting that without this sentence in the statute the mother has the right of a bond protecting her for the full order, yet it is insisted the addition of this sentence deprives her of the right of security for payment of the costs and her expenses; that the issue of the execution therefor is in the place of their inclusion in the bond. Still it is not claimed that the bond should not include support to time of judgment. Such a position is inconsistent and no valid reason appears for such a distinction. It is just as essential to the mother that she have bond protection for the costs and expense of her delivery, nursing, medicine and medical attendance as for her expense for the support of the child before judgment. The purpose of the issue of the execution is to give her assistance additional to her coverage by the bond and is not inconsistent with it. It is cumulative, not restrictive. Besides, the issue of the execution gives her a forthright remedy. If he has property, it may be levied on without delay. She need not await the determination of a suit on the bond. While she has the right to proceed both by execution and on the bond, there can be only one satisfaction. The respondent is not subjected to double penalty. We consider that this last sentence subtracts nothing from the effect of the previous language but simply gives to her a possible auxiliary remedy altogether consistent with the purpose and scope of the bastardy statute.

In the early case of *Taylor* v. *Hughes*, 3 Me., 433, a respondent in a bastardy process, who did not surrender himself before judgment but who appeared in Court, defended, was found guilty and adjudged the father of the child, urged that the sureties on his original bond for his appearance and for the abiding the order of

the Court were discharged because of the fact that the Court, after judgment, ordered him to give a bond to perform the order of the Court. The Court did not so hold but, on the contrary, held that the statutory provision for the new bond was for "new security which the Court may require, is only a super-added one." *Taylor* v. *Hughes*, supra, was confirmed in *Corson* v. *Tuttle*, 19 Me., 409, in which it was held that the failure to give the new bond (now provided for in Section 7) and consequent commitment to jail did not release the sureties on the original bond because the new bond was ancillary. The Court said, on page 411:

> "But it appears to us to have been, not a substitution for the first order, but as ancillary to it, and made expressly for its enforcement."

Both *Taylor* v. *Hughes*, supra, and *Corson* v. *Tuttle*, supra, were approved in *Doyen* v. *Leavitt*, 76 Me., 247, 250.

So here by analogy we hold that the possible issue of execution as in tort does not relieve the respondent from the necessity, would he keep out of jail, of giving a bond which shall secure the performance of the whole order, including the costs of suit and her expenses.

The respondent relies on the law enunciated in *Howard* v. *Railroad Co.*, 86 Me., 387, at page 389, 29 A., 1101, 1102, in which the Court said: "But the rule of interpretation which governs in cases generally, where any doubt or uncertainty exists, is that the last words control all preceding words for the purpose of correcting any inconsistency of construction," and from this argues that this last sentence controls the preceding language. Also see *Millett* v. *Hayes*, 132 Me., 12, 15, 164 A., 741. No doubt these cases state a correct rule of construction. In both of them there was a clear-cut repugnancy between the language constituting amendatory words and the amendment as finally stated. The latter was held to control. In *Howard* v. *Railroad Company*, supra, on pages 389 and 390, Chief Justice Peters quoted Section 183 from Endlich on the Interpretation of Statutes, and by it, it appears, that for the rule to apply there must be an irreconcilable conflict between the earlier and the later provision in the statute.

In this Section there is no such irreconcilable conflict, no necessary repugnancy; it harmonizes.

It is suggested that the provision in Section 10 of said Chapter 111 (whereby the mother after the liberation of the father from jail following six months' incarceration, he not having been able to give the bond as ordered) that she may recover of him in an action of debt any sum of money which ought to have been paid pursuant to the order, indicates that the issue of the execution, as provided for in Section 7, is not a cumulative remedy. It is urged that "if the last sentence of Section 7 simply provided a cumulative remedy, an action of debt would be wholly unnecessary." This argument might have force if Section 10 had been enacted subsequently to the amendment of 1909, which provided for the issue of the execution. Section 10 as law long preceded the amendment in time and the Legislature simply allowed this provision of Section 10 to remain in the statute. Thus the deduction drawn by respondent's counsel is not justified.

To permit recovery by the mother in an action of debt, based on the order of Court, this provision was not necessary anyway, for, without the aid of the statute, the statutory order having been made, remedy at common law would lie for its enforcement. It was simply a statutory declaration of a common law right. As we view it, the original reason for this provision, as well as the reason for allowing it to remain in the statute after the amendment of 1909, was to dispel any doubt, if such should arise, as to whether or not the respondent's incarceration and discharge from jail should constitute satisfaction of the order previously made so as to prevent the mother later from enforcement of it in an ordinary action of debt.

Having carefully studied the whole of the Bastardy Act, and considered its purpose and its scope, the construction we place upon it leads us to the conclusion that the complainant was entitled to receive, if a bond were given, one that contained full coverage of the whole order as made.

*Exceptions sustained.*