MAINE EMPLOYMENT SECURITY COMMISSION
*vs.*
FRANK CHAREST D/B/A
SANFORD AND SPRINGVALE CLEANERS

Kennebec.   Opinion, February 9, 1962.

*Milton L. Bradford, Asst. Atty. Gen.,*
*Frank A. Farrington, Asst. Atty. Gen.,* for plaintiff.

*J. Armand Gendron,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

DUBORD, J.   This matter is before us upon an appeal from a decision of a Justice of the Superior Court in a case heard upon an agreed statement of facts.

The defendant (hereinafter referred to as "Employer"), was during the period involved an employer under the provisions of the Maine Employment Security Law. The Maine Employment Security Commission (hereinafter referred to as the "Commission"), brought an action of debt against the employer under the provisions of § 19 II, Chapter 29, R. S., 1954, seeking to recover contributions alleged to be due from the employer, together with interest at the statutory rates. In a separate count, the Commission also seeks to recover a penalty in the amount of $7.14 assessed under the provisions of the current section of the applicable statute, viz., § 19 I-A, Chapter 29, R. S., 1954.

Included in the amounts sought to be recovered are the following: Item 1, Second Quarter of 1950, $68.76; Item 2, Third Quarter of 1952, $70.34; Item 3, Fourth Quarter of 1952, $137.51; Item 4, Second Quarter of 1953, $160.29; Item 5, Fourth Quarter of 1953, $74.54; Item 6, First Quarter of 1954, $65.63; Item 7, First Quarter of 1955, $134.09, and Item 8, Fourth Quarter of 1955, $117.48.

The writ also includes charges for certain quarters in the year 1957, but it was stipulated that these items have been paid in full by the Employer, without prejudice.

It will be noted that the amount of contributions sought to be recovered total $828.64. The Employer admits that he has failed to pay the assessment based upon his experience rate for certain quarters in a total amount of $318.26. Consequently, he admits liability for this amount, but denies liability for the difference of $510.38.

At this point we digress to explain the manner in which the rate of contributions to be paid by an employer is determined.

Under the provisions of § 17 II, Chapter 29, R. S., 1954, it is provided that each employer subject to the provisions

of the Employment Security Law, shall pay contributions at the rate of 2.7% of the wages paid by him with respect to employment during each calendar year with a proviso that based upon experience classification, the rate may be reduced.

In the instant case because of good experience classification, the employer had been granted rates lower than the rate provided in § 17 II, *supra*.

During the periods for which contributions are being sought from the employer, § 17 IV C, was in effect. This section read as follows:

> "Any employer who under the provisions of this chapter would otherwise be entitled to a rate of less than 2.7% shall nevertheless pay a rate of 2.7% for any quarter with respect to which he was in arrears in the payment of contributions or interest, unless the delay was occasioned by the illness or death of the person in charge of the records of the employing unit or by other unavoidable accident which shall excuse the employing unit from said penalty."

No contention is made that the employer is excused by any of the reasons set forth in the foregoing statute.

The amount of $510.38, above referred to, is the difference between the amount of the contributions computed on the basis of the Employer's experience rate and the amount of contributions computed at the maximum rate of 2.7%, claimed by the Commission because of late payment, or complete failure to pay, on the part of the Employer.

The Employer concedes that he is liable for the amount of $7.14 set forth in the third count of plaintiff's writ. A dispute has arisen concerning the interest which should be assessed against the Employer, and the principal contention of the Employer, in respect thereto, is that he is not liable

for interest on the amounts representing the difference between the contributions computed at his basic experience rate and the increased contributions at the rate of 2.7%.

The principal issue presented and argued by counsel for both parties involves the question of whether or not the increased contributions in the amount of $510.38 are made up of penalties. The Employer contends that this amount represents aggregate penalties and that these penalties are not proportioned to the offense of failure on the part of an employer to pay on the due date and that the statute establishing these penalties is violative of Section 9, Article I, of the Constitution of Maine.

The Commission, on the other hand, argues that these amounts are not penalties and that Section 9, of Article I, of the Constitution of Maine does not apply to the case. The Commission further maintains that the provisions of the statute making it compulsory on the Commission to assess the maximum percent of the contributions, if payment at the experience rate is not made promptly, are not penal in nature. The Commission takes the position that the Maine Employment Security Law makes provision for merit rating, conditioned on payment by the employer on time. The Commission says it is not a penalty, but is a condition to be met by an employer in order that he be entitled to the privilege of paying a lower rate based on a good experience record.

To briefly recapitulate, the Employer concedes that he is liable for the amount of $7.14 as a penalty imposed under the current statute. He admits that he is liable for interest on the amount of $85.95 for the second quarter of 1950, for a period of 36 days. He concedes liability for interest on the assessment of $48.34 for the third quarter of 1952, for a period of 4 days. He admits liability for the assessment in the amount of $56.02, for the fourth quarter of 1952,

with interest from the required date of payment. In like manner, he admits liability for the assessment of $65.30 for the second quarter of 1953, together with interest from the due date. He admits liability for interest on the amount of $59.63 for the fourth quarter of 1953, for a period of 25 days. He admits liability for interest on the amount of $52.49 for a period of 18 days on the assessment for the first quarter of 1954. He admits liability for the assessment of $79.46 for the first quarter of 1955, together with interest from the due date. He admits liability for the assessment of $117.48 for the fourth quarter of 1955, together with interest from the due date and the penalty of 5% prescribed by § 19 I-A, Chapter 29, R. S., 1954. He denies liability for interest upon the increased assessments between his basic experience rate and the maximum rate of 2.7%.

It is essential that we first decide the issue of the nature of the increased assessments brought about by failure to pay, on the due date, the contributions computed at the basic experience rate. Are these increased assessments penalties, as claimed by the Employer, or is an experience rate granted an employer because of a good employment record in the nature of a reward conditioned upon prompt payment, as contended by the Commission?

A study of the applicable statute appears to be in order.

Under the provisions of Chapter 331 P. L., 1943, there was enacted § 7 (D) (3), reading as follows:

"Any employer who under the provisions of this act would otherwise be entitled to a rate of less than 2.7% shall nevertheless pay a rate of 2.7% for any quarter during which he was in arrears in the payment of contributions or interest, and his rate shall continue at 2.7% for the remainder of the contribution year."

This section was amended with an emergency clause by Chapter 113, P. L., 1945, to read as follows:

" '(3)   Any employer who under the provisions of this act would otherwise be entitled to a rate of less than 2.7% shall nevertheless pay a rate of 2.7% for any quarter with respect to which he was in arrears in the payment of contributions or interest, unless the delay was occasioned by the illness or death of the person in charge of the records of the employing unit or by other unavoidable accident which shall excuse the employing unit from said penalty.' "

We take note of the emergency preamble which read in part as follows:

"Whereas, if said report and contributions are delinquent, the employing unit is penalized for the entire calendar year rather than for any quarter in which delinquency occurs; and Whereas, the penalty works an undue hardship on delinquent employing units; and should be corrected etc.,"

The foregoing section is repealed by Section 8, Chapter 421, P. L., 1955 and there was enacted a new section to be known as 19 I-A, Chapter 29, R. S., 1954, reading as follows:

"In the event quarterly contributions are not paid when due, the Commission shall assess a penalty of 5% of the amount of the contributions but such penalty shall not be less than $5 nor more than $100.   The Commission may waive such penalty if it finds that the delay was occasioned by the illness or death of the person in charge of the records of the employing unit or by other unavoidable accident which shall excuse the employing unit from said penalty.  Provided, however, an extension of time up to 30 days beyond the due date may be allowed by the Commission for good cause upon written request made on or before the due date."

The foregoing section has been in effect since August 20, 1955, and as of August 20, 1955 the previous existing section of the statute, under which the increased assessments

disputed by the Employer were made, was completely repealed.

The issue presented concerning the nature of the increased assessments which the Commission seeks to recover because of the delinquency of the Employer is one of novel impression in this jurisdiction. As a matter of fact, there appear to be no decisions in any jurisdiction upon the point. Counsel have cited none and the only reference we can find is in the Pennsylvania case of *Boyertown Burial Casket Co. v. Commonwealth*, 79 A. (2nd) 449, where the court quoted with apparent approval a statement in the opinion of the justice of the Superior Court from which an appeal had been taken, to the effect that "experience rating was a reward and not a penalty."

A study of the available annotations relating to the definitions of "penalties" leads into a labyrinth of doubt and misunderstanding insofar as such definitions may apply to the issue now before us.

In 23 Am. Jur., Forfeitures and Penalties, § 27, we are informed that the words "penal" and "penalty" have many different shades of meaning; that strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws. It is said that a penalty is in the nature of a punishment for the nonperformance of an act or for the performance of an unlawful act.

In Section 28 we find the statement:

> "The determination of the question whether a statute imposes a penalty is not necessarily to be controlled by the designation which the legislature has given to it."

We are concerned with the fact that the emergency preamble contained in Chapter 113, P. L., 1945, designated the

increased assessments imposed by the prior existing statute as a penalty, and that the new section itself, enacted with the emergency clause, described the imposition of the increased contribution as a penalty.

A perusal of Section 16, Part Third, Article IV, of the Constitution of Maine, relating to emergency legislation, is of interest, and perhaps furnishes a clue for the action of the legislature in describing the increased assessments or contributions as penalties. Under the provisions of this constitutional mandate, it is essential that there be presented to the legislature, in the case of proposed emergency legislation, reasons in the preamble why the act should go into effect immediately. The foregoing section of the Constitution provides in substance that acts of the legislature shall take effect 90 days after the recess of the Legislature passing it "unless in case of emergency (which with the facts constituting the emergency shall be expressed in the preamble of the act) . . ." In other words it is necessary to recite in the preamble the facts which create the emergency and it is easy to conclude that in the instant case it was necessary to find some fact and recite that fact in the preamble which actually created an emergency. Unless the prior existing legislation was in the nature of a penalty, there probably was no emergency. Then having used the word "penalty" in the emergency preamble it was easy to pass on into the new legislation a definition of it as a penalty.

However, bearing in mind the previously quoted clause that the determination of the question whether a statute imposes a penalty is not necessarily to be controlled by the designation which the legislature has given to it, we conclude that the increased assessments are not in the nature of penalties. Perhaps in a colloquial sense, or in the language of the layman, the increased assessments might well be considered as penalties. However, we are convinced that the decreased rate of assessment, by reason of good expe-

rience rating, is in the nature of a reward or a bonus, subject to prompt payment. That these increased assessments are not to be considered as penalties, under the then existing statute, it seems to us, is also indicated by the fact that an employer who had not received the benefit of a low experience rate was not in any manner penalized for failure to pay on time, other than the general liability for interest from the due date.

Having determined that the increased assessments are not penalties, obviously it is unnecessary to consider the constitutional issue raised by the pleadings and arguments of counsel. However, there arises for consideration and opinion thereon a point which was not raised by counsel for either side, and this relates to the effect of the legislative repeal of Section 17 C, Chapter 29, R. S., 1954, enacted as Chapter 113, P. L., 1945.

This section was completely repealed without any saving clause by the 1955 legislation and the Commission's writ was instituted after the repeal.

Now, what is the effect of the repeal of the statute upon that portion of the action of the Commission which seeks to recover increased assessments? Does this repeal have a retrospective effect which wipes out the liability which the Commission seeks to enforce?

While the general rule appears to be that where a statute is repealed without a re-enactment of the repealed law in substantially the same terms, and there is no saving clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect is considered as if it had never existed, such does not appear to be the law in reference to the repeal of a statute providing for taxation.

> "The general rule is that, in the absence of clear legislative intent to the contrary, repealing acts

are to be given a purely prospective construction * * *. Ordinarily, a repeal of a statute does not operate to remit taxes accrued under the repealed act." 84 C. J. S., Taxation, § 58 c (2).

See also, *State of Maine* v. *Waterville Savings Bank*, 68 Me. 515.

In determining the tax liability in the case before us we start with the premise that the tax on each employer, subject to the act, was at the rate of 2.7%. This is provided by Section 17 II, Chapter 29, R. S., 1954, which reads as follows:

"Each employer shall pay contributions at the rate of 2.7% of wages paid by him with respect to employment during each calendar year, except as otherwise provided in subsection IV of this section."

Subsection IV is the one which provides for a reduction in the contributions or tax under certain conditions. In other words under the provisions of Section 17 II, *supra*, the employer in the instant case was subject to a tax of 2.7% to which he could secure a reduction based on a good experience rating provided he complied with the law and paid the contributions or tax on time. This he failed to do, so that liability against him at 2.7% became fixed and vested before the repeal of the statute with which we are now involved.

There is nothing to indicate that it was the intention of the legislature to remit any liability for taxes which had already accrued at the time of the enactment of the repealing statute.

It is, therefore, our opinion that when the employer failed to comply with the provisions of the statute, his tax liability became fixed and that he is now liable.

The appeal is denied and the cause remanded to the Superior Court for an entry of a judgment in favor of the Commission in accordance with this opinion.

*So ordered.*