**Jeanette N. THUT and Eric Brian Merritt**

v.

**Winslow V. GRANT.**

Supreme Judicial Court of Maine.

Aug. 24, 1971.

**2**

Lewellyn R. Michaud, Bangor, for plaintiffs.

Orman G. Twitchell, Bangor, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, and WERNICK, JJ.

WEBBER, Justice.

On report. On March 21, 1969 plaintiff Thut instituted a bastardy proceeding by complaint and summons. By the first count thereof plaintiff alleged that the defendant is the father of her child Eric born out of wedlock on March 29, 1963. Under this count plaintiff seeks a filiation adjudication and further seeks to recover the reasonable expenses of her pregnancy and confinement and the expense attendant upon the support of said child past and future together with the furnishing of bond to assure compliance with the orders of court. By the second count the plaintiff in her role as mother and next friend of her minor child and on his behalf made similar allegations. Under this count plaintiff child seeks a filiation adjudication and an order for his support during his minority to be assured by defendant's bond. The complaint purports to be brought pursuant to 19 M.R.S.A. Sec. 271 et seq. and nowhere alleges accusation made by the plaintiff Thut during her travail or her constancy therein. The defendant seasonably moved to dismiss Count I for failure to state a cause of action and to dismiss Count II upon the same ground and for want of jurisdiction of the subject matter. The Court below, after dismissing the defendant's motion, concluded that its interlocutory order or ruling presented a question of law which ought to be determined by the Law Court before any further proceedings are taken therein. The case was accordingly reported pursuant to M.R.C.P., Rule 72(c) and is before us on the complaint, defendant's amended

motion to dismiss, the order thereon and the proceedings for report.[1]

██ Under the common law as applied in Maine, as in most states, the putative father owed no duty of support to his illegitimate child nor any duty to assist the mother of such child in such support. The duty imposed is wholly statutory. Virtually from its inception Maine enacted statutes (P.L. 1821, Ch. 72) providing assistance to the mother by the putative father in support of the child. The bastardy statutes, as amended from time to time, took their final form in 19 M.R.S.A. Secs. 251 to 262 inclusive. The problem presented here stems from the fact that in 1967 between the date of birth of this child on March 29, 1963 and the bringing of this action on March 21, 1969, all of the existing statutes relating to bastardy proceedings were repealed and simultaneously a new law captioned the "Uniform Act on Paternity" was enacted in place thereof.

In gauging the effect of the repeal, we must first examine the old law to ascertain what substantive rights were afforded thereby and which of the provisions were merely procedural. The same analysis must be made of the new law with an eye to determining what substantive rights were carried over and what changes were effected in procedural requirements.

██ Under 19 M.R.S.A. Sec. 257 the mother, upon proof by the fair preponderance of the evidence[2] of the allegations made in her complaint and after satisfying all technical procedural requirements imposed by the statutes, was entitled to (a) an adjudication as to defendant's paternity, (b) an order charging him with the maintenance of the child, with the assistance of the mother, in such amounts as the court might determine, (c) an order compelling defendant to pay the complainant her costs of action, the expense of her delivery and nursing, medical attendance during the period of her sickness and convalescence, and the support of the child to the date of rendition of judgment, and (d) an order for the giving of a bond by the defendant with sufficient sureties to the complainant conditioned upon defendant's performance of the orders of court[3]. Under the new law the obligations of the father so far as pertinent here are stated in 19 M.R.S.A. Sec. 271 in these terms:

> "The father of a child which is or may be born out of wedlock is liable to the same extent as the father of a child born in wedlock, * * *, for the reasonable expense of the mother's pregnancy and confinement and for the education, necessary support * * * of the child and reasonbale counsel fees,[4] for the prosecution of paternity proceedings."

Additionally, Sec. 272 provides that "paternity may be determined" and Sec. 282 provides for a requirement of bond. We construe 19 M.R.S.A., Secs. 271 to 287 as enacted by P.L.1967, Ch. 325, Sec. 2 as conferring on a complainant mother all of the substantive rights above enumerated which she enjoyed under the former statutes repealed by P.L.1967, Ch. 325, Sec. 1.[5]

1. Other documents included in the record on report are not deemed relevant or material to the reported issue.

2. See Knowles v. Scribner (1869) 57 Me. 495.

3. All of these several elements were incorporated in a single order of the court. Woodbury v. Wilson (1935) 133 Me. 329, 177 A. 708.

4. That counsel fees could be ordered as a part of complainant's costs under the old law is implicit in the holding of Bickford -v. Ellis (1862) 50 Me. 121.

5. Our conclusion as to what rights of the mother may be deemed substantive as opposed to those rights and requirements which are merely procedural is supported by earlier cases which discussed the fundamental purposes of the bastardy law. In Smith v. Lint (1854) 37 Me. 546, 547, the Court said, "The object of the statute relating to bastard children was to compel the putative father to aid

**4**

Since these substantive rights accrued upon the birth of the child out of wedlock, what then was the effect of the subsequent repeal of the law under which the rights first arose? In State of Maine v. Bean (1963) 159 Me. 455, 461, 195 A.2d 68, we dealt with rights which first arose under a statute which was subsequently repealed. The repeal was accompanied by a simultaneous enactment of new laws preserving much of the substance of the repealed statutes. We first disposed of the argument that R.S.1954, Ch. 10, Sec. 21 as amended (now 1 M.R.S.A. Sec. 302) providing in part, "Actions pending at the time of the * * * repeal of an act are not affected thereby," was exclusive. We held that statute *not* to be exclusive, and even if there were no action pending, vested rights might survive repeal. Relying in part on Maine v. Waterville Savings Bank (1878) 68 Me. 515,[6] and noting that simultaneously the Legislature enacted new laws "by which the substance" of the vested rights "remained undisturbed", we adopted the majority rule as expressed in 50 Am.Jur. 559, Sec. 555 that such vested rights are preserved and may be enforced. It has been said that to this extent the repeal is "neutralized" and the manifest intention of the Legislature not to destroy the prior rights is given effect. So in the instant case the rights of the complainant mother which arose upon the birth of her child out of wedlock were not destroyed by repeal but remained legally enforceable at the time she filed her complaint.

We turn now to purely procedural matters. The old law, and especially 19 M.R.S.A. Secs. 251 to 256 inclusive, set forth detailed and technical procedural requirements for the prosecution of a bastardy complaint. Failure to comply strictly with these procedural niceties was fatal to the attempted prosecution of complainant's case. Woodbury v. Yeaton (1937) 135 Me. 147, 191 A. 278. This was so even though the reason which prompted a particular procedural requirement had long since disappeared.[7] Even though our predecessors were reluctant to mitigate the rigidity of these procedural requirements, they did recognize the requirements as being procedural in nature and not matters of substantive right. This becomes apparent when we examine the language and rationale of Woodbury v. Yeaton, supra. In that case although the declaration alleged an accusation during travail, the proof disclosed that the child had been delivered by Caesarean operation while the complainant was under anesthetics and no accusation was in fact made. Tracing the development of the law, the Court noted that the statutory relaxation of the procedural rule rendering complainant incompetent as a witness was born of necessity in bastardy cases. The Court said:

> "When first enacted and for a long period thereafter, in ordinary civil ac-

---

in supporting his illicit offspring." To the same effect, Woodbury v. Wilson (1935) 133 Me. 329, 177 A. 708. In Low v. Mitchell (1841) 18 Me. 372, 374, it was stated, "The statute respecting the maintenance of children born out of wedlock was designed to relieve the towns from burthen *as well as to aid the mother in their support.*" (Emphasis ours.) In Roy v. Poulin (1909) 105 Me. 411, 412, 74 A. 923, the Court said, "The other view is that the statute converts an existing moral obligation of the father into a legal obligation, * * *. * * * The father of an illegitimate child is certainly under a moral obligation to assist the mother in its maintenance. Our statute makes the obligation legal and enforceable."

6. This case noted the more rigid rule announced in Coffin v. Rich (1858) 45 Me. 507, 512, but observed that Coffin was overruled by the U. S. Supreme Court in Hawthorne v. Calef (1864) 69 U.S. (2 Wall.) 10, 17 L.Ed. 776.

7. When P.L.1864, Ch. 272 was enacted removing the disqualification of parties to service as witnesses, the reason which prompted the requirement ceased to exist. Such was the conclusion reached by the Connecticut Court with respect to a similar statutory history in that State. Booth v. Hart (1876) 43 Conn. 480.

tions, the parties were not permitted to testify because of their interest in the result. From the very nature of bastardy actions, however, it was apparent that ofttimes evidence could not be presented of the paternity of a child unless its mother could testify, because the facts were exclusively within her own knowledge. The law as originally passed in Maine, provided that the mother might make her accusation in writing under oath, respecting the man accused, and it was further provided that,

'If she being put upon the discovery of the truth respecting the same accusation in the time of her travail, shall thereupon accuse the same person of being the father of the child, of which she is about to be delivered, and shall continue constant in such accusation, and shall prosecute him as the father of such child (in which prosecution she shall be admitted as a competent witness, and her credibility be left to the jury) and such examination shall be given in evidence on the trial of the issue * * * *he shall be adjudged the * * * father of such child.'

"These requirements have been retained in our law without change from the institution of the state to the present time. There have been some slight alterations in phraseology, but none in import. R.S., c. 111, now *requires complaint in writing under oath, accusation during travail, and constancy in such accusation.*" (Emphasis supplied.)

The Court recognized that statutorily imposed procedural requirements such as accusation in travail and subsequent constancy were introduced to give additional assurance of credibility and justify the exception then made which permitted the bastardy complainant to become a competent witness. The Court then turned to an analysis of the relaxation of similar procedural requirements in other jurisdictions, especially Connecticut and New Hampshire, and concluded that "(I)t is probably true that in most jurisdictions, either by virtue of a particular statutory change in the bastardy acts, or by judicial interpretation of general legislative enactments permitting interested parties to testify, the rule has been abrogated which required the mother to accuse the father of his paternity during the time of her travail." The Court continued, "In Maine this is not the fact. Prior to the passage of the legislation of 1864 allowing parties to be witnesses in their own behalf, it was uniformly held that accusation of the complainant at the time of her travail and her constancy in such accusation *were prerequisites to the admission of the complainant as a witness.*" (Emphasis supplied.) The Court concluded that even though it might be thought that these procedural requirements were unnecessary after 1864, they were so firmly entrenched in the bastardy law of Maine that they should be removed, if at all, only by legislative action. This is precisely what has been done by the passage of the "Uniform Act on Paternity." Although the *Woodbury* Court admittedly did not expressly refer to "procedural requirements" or "substantive rights," we are satisfied that implicit in the opinion and holding was a recognition that the several steps preliminary to obtaining relief, deemed indispensable to success, were of their very nature procedural. The ultimate relief, that is, the substantive right to be enforced, was that the defendant should "be adjudged the father of such child" and should assume the obligations stemming therefrom. These rights stand in sharp contrast to the procedural method of obtaining them which is the only subject of consideration in *Woodbury.* As the opinion properly noted, although up to that time the Legislature had made no change in procedural requirements, it was "within its province to do so." The effect of the enactment of the "Uniform Act on Paternity" was to abolish the form of remedy available in bastardy proceedings and all the technical procedural requirements embraced therein.

**6**

There was then substituted a relatively simple civil remedy by which a complainant mother upon adequate proof might obtain relief.

The defendant here can no longer insist that the complainant allege or prove an accusation made during travail and constancy in such accusation. In our view the generally accepted and applicable law is well stated in two statements found in 50 Am.Jur. as follows:

> "It is firmly established that there is no vested right in any particular mode of procedure or remedy, and it is a general rule that, where a statute giving a particular remedy is unqualifiedly repealed, the remedy is gone." (Sec. 529, Page 535)

> "A fortiori, a statute or amendment which furnishes a new remedy, but does not impair or affect any contractual obligations or disturb any vested rights, is applicable to proceedings begun after its passage, though relating to acts done previously thereto." (Sec. 482, Page 506)

As we said in Miller v. Fallon (1936) 134 Me. 145, 147, 183 A. 416, 417, "There can be no well-grounded dissent from the settled rule that the Legislature has full power and authority to regulate and change the form of remedies in actions if no vested rights are impaired *or personal liabilities created*. There is no constitutional inhibition against the enactment of retroactive legislation which affects remedies only." (Emphasis ours.) See also Berry v. Clary (1885) 77 Me. 482, 1 A. 360.

At the moment we are concerned only with the right of the complainant to make use of the new procedural methods afforded by the "Uniform Act on Paterni-

ty" to enforce rights which arose under the old law but were preserved by the new law. We hold that complainant was so entitled and that the repealed procedural requirements of the old law had no application to the prosecution of this complaint. The Justice below properly declined to dismiss the first count for failure to state a claim upon which relief can be granted.

Somewhat different considerations apply and govern decision with respect to Count II. Here relief is sought directly on behalf of the minor plaintiff. As already noted, the child born out of wedlock had no common law right to compel support by the putative father. More importantly, the bastardy statutes repealed in 1967 had afforded no rights to such minor child. Under those statutes he was merely the indirect beneficiary of rights afforded to his mother. The "Uniform Act on Paternity" for the first time grants direct rights to the minor child and imposes a new and direct liability upon one shown to be the father. In addition to the broad provisions of 19 M.R.S.A. Sec. 271 above quoted, Sec. 272 provides in pertinent part, "Paternity may be determined upon the complaint of the * * * child * * *. If paternity has been determined or has been acknowledged according to the laws of this State, the liabilities of the father may be enforced in the same or other proceedings by the * * * child * * *."

In Coffin v. Rich (1858) 45 Me. 507, 514[8] the Court discussed the constitutional limitations[9] on retrospective application of new legislation in these terms: "There can be no doubt that Legislatures have the power to pass retrospective statutes, if they affect remedies only. Such is the well settled law of this State. But they have no constitutional power to enact retrospective laws which impair vested rights, *or create personal liabilities.*" (Emphasis

---

8. This aspect of the law as stated in *Coffin* was not questioned or adversely affected by the holding in *Hawthorne*, supra, footnote 6.

9. The Constitution of Maine, Article I, Sec. 11 provides in part, "The Legislature shall pass no * * * *ex post facto* law, * * *."

ours) Such was also the rule recognized in Miller v. Fallon, supra, and Berry v. Clary, supra. Thus in the instant case if the "Uniform Act of Paternity" were construed as imposing a past personal liability on the defendant, it would suffer from constitutional infirmity and would be unenforceable by the minor plaintiff. In Peters v. District of Columbia (1951) D.C.Mun.App., 84 A.2d 115, the Court dealt with the precise issue. In that case the newly created remedy was for a *married woman,* mother of a child born out of wedlock, whereas the newly created remedy here is for the *child,* but the principle is the same.

The Court had this to say:

"It has been held, and we think correctly, that the obligation to support is a distinct *and continuing duty.* * * It has also been held that it is immaterial when the child was begotten or born. * * * The antecedent fact of defendant's paternity having been established, the Juvenile Court did no more than pass an order fixing the amount he was to pay for the support of the child *in the future.* In this there was nothing of a retroactive or ex post facto nature. 'It is to enforce that present legal duty, and none other, that the action is brought.' * * * We think it clear that in this case a prospective statute has been given a prospective effect, and that the jurisdictional question must be decided adversely to appellant." (First emphasis ours.)

See also Corley v. Moore (1964) 236 Md. 241, 203 A.2d 697, 698; Murphy v. District of Columbia (1952) D.C.Mun.App., 85 A.2d 805.

In the instant case the complaint as framed permits the Court to order support and fix the terms thereof *for the future* and during plaintiff's child's minority. The statute, properly construed as operating prospectively, affords such relief to the plaintiff child.

Our attention has been directed to the fact that when the "Uniform Act on Paternity" was first enacted by P.L. 1967, Ch. 325, the third section thereof provided:

"Operation. This Act applies to all cases of birth out of wedlock as defined in this Act where birth occurs after the effective date of this Act."

Apparently recognizing that through inadvertence it had erroneously and contrary to its intention provided no remedy with respect to births which had occurred prior to the passage of the Act but as to which no action had as yet been instituted, the Legislature included in P.L.1967, Ch. 544, "An Act to Correct Errors and Inconsistencies in the Public Laws," the following:

"Sec. 102. P.L.1967, c. 325, § 3, repealed and replaced. Section 3 of chapter 325 of the public laws of 1967 is repealed and the following enacted in place thereof:

"Sec. 3. Operation. This Act shall apply to all cases of birth out of wedlock where an action to determine paternity is commenced after October 7, 1967."

Both actions were taken by the One Hundred and Third Legislature, the second and corrective action being taken at a subsequent and special session thereof. As to the *rights of the complainant mother* which preexisted under the repealed bastardy statutes, we are satisfied that the Legislature never intended to divest a person so situated of such rights, even if that were legally permissible. The seeming hiatus created by a literal construction of the repealed section 3 would produce an absurd consequence never intended by the Legislature. We therefore hold that there was no break in the continuity of substantive rights which the mother in an action brought after October 7, 1967 may now enforce. The problem does not, of course, arise with respect to the rights asserted by the minor plaintiff since they arise only under the new law in any event.

We also treat P.L.1967, Ch. 544, Sec. 102 as amending P.L.1967, Ch. 325, Sec. 2 (with respect to 19 M.R.S.A. Sec. 286) by necessary implication so as to make the rules of civil procedure applicable to all complaints under the "Uniform Act on Paternity" commenced after October 7, 1967. With all statutory rules of procedure applicable to bastardy proceedings repealed, there would otherwise be no rules of procedure available to govern the conduct of a case where birth of a child out of wedlock occurred prior to the effective date of the Act but action was not instituted until after said date. This construction is again compelled to avoid an absurd consequence and to give effect to the manifest intention and purpose of the Legislature.[10]

Finally we conclude that the ruling below was not erroneous and the case should now be remanded for further proceedings upon the complaint. Although some other matters have been touched upon in argument, consideration of them would be premature and they are not properly before us on report. The entry will be

Appeal from interlocutory order denied. Case remanded for further proceedings not inconsistent with this opinion.

---

10. For discussion of the application of the Maine Rules of Civil Procedure to actions brought under the "Uniform Act on Paternity", see Field, McKusick and Wroth, Maine Civil Practice, 2d Ed., Vol. 2, Page 335, Comment § 81.6.